WILLIAM FRANKLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Franklin v. Commissioner
Docket No. 15188-89
United States Tax Court
T.C. Memo 1993-184; 1993 Tax Ct. Memo LEXIS 181; 65 T.C.M. (CCH) 2497; April 26, 1993, Filed *181 Decision will be entered under Rule 155. Petitioner pled guilty to conducting a continuing criminal enterprise involving heroin sales for the period June 1982 through mid-July 1987 and to willfully making a false return by failing to include income and expenses from heroin distribution in his 1983 Federal income tax return. Respondent determined deficiencies and additions to tax for petitioner's taxable years 1982 and 1983 relating to unreported narcotics income. Petitioner challenged the deficiency notice on the grounds that it was arbitrary. 1. Held: The notice of deficiency is nonarbitrary as to both 1982 and 1983. 2. Held, further, petitioner is liable for deficiencies and additions to tax under sec. 6661, I.R.C., for both 1982 and 1983. 3. Held, further, respondent carries her burden of proving, by clear and convincing evidence, some underpayment for both 1982 and 1983. Respondent also carries her burden of proving, by clear and convincing evidence, petitioner's fraudulent intent for each year. Accordingly, we sustain the additions to tax under sec. 6653(b)(1), I.R.C., for 1982 and 1983. 4. Held, further, respondent proves, by clear *182 and convincing evidence, an underpayment attributable to unreported income of $ 500, for both 1982 and 1983. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). Accordingly, we sustain the additions to tax under sec. 6653(b)(2), I.R.C., for both 1982 and 1983, with respect to the underpayment attributable to unreported income of $ 500. For petitioner: Robert M. Simels. For respondent: Robert A. Walker, Jr., and Mary Corrigan Gorman. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year Deficiency Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 155,214
$ 77,607
50% of the  $ 38,804
interest due  on $ 155,214  1983
213,767
106,884
50% of the  53,442
interest due  on $ 213,767  The deficiency notice explained the determinations as being based on receipt of $ 305,245 and $ 423,611 in unreported income from heroin sales in 1982 and 1983, respectively. Petitioner has challenged the determinations and additions to tax. Unless otherwise noted, *183 all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulations of fact filed by the parties and attached exhibits are incorporated by this reference. Petitioner was incarcerated in the Federal Correctional Institution in Memphis, Tennessee, when he filed the petition in this case. Criminal Convictions
In 1977, petitioner was convicted in the United States District Court for the District of Maryland of conspiracy to distribute heroin. Petitioner pled guilty to conspiracy and subsequently was sentenced to a 12-year prison term. Petitioner served a portion of his sentence in a Federal penitentiary and was released to the Volunteers of America Halfway House in Baltimore, Maryland, in June 1982. On July 17, 1987, pursuant to a superseding indictment, petitioner was indicted by a Federal grand jury on 28 counts of narcotics and Internal Revenue Code violations. Petitioner pled guilty to counts 9, 12, and 23 of the superseding indictment and is currently serving a nonparolable sentence *184 of 10 years. With regard to the superseding indictment, count 23 charged petitioner with possession of a firearm by a convicted felon and is not relevant to the present case. Count 12 charged petitioner with violating section 7206(1) by willfully making a false return by failing to include in his 1983 Federal income tax return gross income and expenses from the business of distributing heroin. Count 9 charged petitioner as follows: A. From in or about June, 1982, and continuing thereafter up to and including the date of this Indictment, in the State and District of Maryland, defendant WILLIAM E. FRANKLIN did unlawfully, knowingly and intentionally engage in a Continuing Criminal Enterprise in that he did on numerous occasions violate Title 21, United States Code, Section 841(a)(1), which violations, including, but not limited to, those set forth in Counts One, Two, Three, Four, Five, and Eight of this Indictment, were part of a continuing series of violations of said statute undertaken by the said Defendant in concert with at least five other persons, with respect to whom WILLIAM E. FRANKLIN occupied a position of organizer, supervisor *185 or other position of management, and from which continuing series of violations WILLIAM E. FRANKLIN obtained substantial income and resources. B. From his engagement in the aforesaid Continuing Criminal Enterprise, the Defendant WILLIAM E. FRANKLIN obtained property, profits and interests which are subject to forfeiture to the United States, including, but not limited to approximately $ 44,080 United States currency seized from WILLIAM E. FRANKLIN'S home at 6713 Yataruba Drive, Baltimore, Maryland, on November 15, 1983 by agents of the United States. 21 U.S.C. section 848.
The counts referred to in count 9 charged petitioner as follows: Count 1 charged petitioner with conspiring to distribute heroin from at least January 1980 to the date of the indictment. Counts 2 through 5 charged petitioner with distributing approximately 50-dosage unit bags of heroin on each of four occasions in Maryland during a period beginning in or after June 1982 and ending in or before November 1982. Count 8 charged distribution of 1500-dosage unit bags of heroin in Maryland on or before October 7, 1983. Section 848 of title 21, U.S.C. (1988), whose violation *186 forms the gravamen of count 9, is commonly known as the "Drug Kingpin Statute". See United States v. Johnson, 575 F.2d 1347, 1358 (5th Cir. 1978). Prior to the District Court's accepting petitioner's plea agreement with regard to the superseding indictment, petitioner was rearraigned in the United States District Court for the District of Maryland on February 22, 1988. In anticipation of the court's accepting petitioner's plea agreement, counsel for the United States represented to the court that, if the case were to go to trial, the United States would show that petitioner, either alone or in conjunction with another, did on numerous occasions in 1982 and on at least one occasion in 1983 distribute heroin. Also, counsel for the United States represented that the United States at trial would be able to show that petitioner's 1983 Federal income tax return falsely failed to disclose income from an ongoing business of heroin distribution. Petitioner's counsel conceded that the United States would be able to obtain a conviction on the three counts to which petitioner was prepared to plead. Petitioner's counsel objected to the court, however, that *187 the United States could not establish through the testimony of the witnesses who had been made known to petitioner that petitioner had been engaged in any criminal activities with them or with anyone else. Petitioner's counsel stated that such witnesses had recanted their prior allegations. Nevertheless, petitioner's counsel agreed with the court that guilt could have been proven by the "accumulation of the totality of the evidence", wholly apart from whether it could be proven by the witnesses in question. The court asked petitioner why he was pleading guilty. Petitioner first answered ambiguously: "Well, Your Honor, one of the main reasons is because I'm dealing with my inner self. Sometimes, you know, a person reaches a stage in their life where they have to set themselves free, and by doing so it calls for a sacrifice. So yes, I just wanted to make that statement." Then, in response to the court's further question as to whether petitioner believed that the United States could prove its case and that is why petitioner was pleading guilty, petitioner answered: "Yes, Your Honor." The court accepted the plea agreement. The court convicted petitioner of the counts to which he *188 had pled guilty and sentenced him to prison for 10 years. The judgment of the court was filed on May 13, 1988. Petitioner's Tax Returns
Petitioner filed his Federal income tax return for 1982 on April 4, 1983. He filed his Federal income tax return for 1983 on April 16, 1984. Petitioner reported no income related to heroin sales on either return. On March 31, 1989, respondent issued the notice of deficiency here at issue, determining that petitioner had unreported income from heroin sales for 1982 and 1983 in the amounts of $ 305,245 and $ 423,611, respectively. That notice provides no further information about such items of income and, in particular, no basis for determining how such amounts were calculated. A petition to this Court timely was made and a trial was held on January 16 and 18, 1991. At that trial, petitioner's only witness was Gregory Welsh, Esq., Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland. Mr. Welsh's testimony related primarily to records of petitioner's that had been seized and Mr. Welsh's activities preparatory to petitioner's 1988 conviction. Petitioner did not testify. In response to a question *189 by the Court, petitioner's counsel stated that it was petitioner's view that petitioner's returns spoke for themselves and that Mr. Welsh's testimony was offered only to corroborate that the documents that supported those returns had been seized by the Government and had at some point, in some way, been used by the Government. Counsel further stated that the only remaining issue was whether the Government could demonstrate that petitioner had income beyond that shown on the returns. Counsel insisted that the Government could not, and that the plea that resulted in petitioner's 1988 conviction was not evidence that petitioner had additional income but was part of a resolution of the case that needed to be made to satisfy the various agencies involved. [1]
*190 Respondent also called Mr. Welsh, whose testimony was elicited in support of respondent's fraud case. Respondent presented no other witnesses. No witness testified as to how respondent calculated the unreported income items here at issue or as to how respondent determined that petitioner underreported his income or underpaid his tax for the years here in question. OPINION Petitioner asserts that respondent's notice of deficiency is without foundation and is inherently arbitrary. Accordingly, petitioner argues that the notice of deficiency constitutes a "naked assessment", which is "invalid" within the rule of Helvering v. Taylor, 293 U.S. 507 (1935). [2] See United States v. Janis, 428 U.S. 433, 441 (1976). Petitioner continues that, respondent having failed otherwise to offer any basis for her calculations or contentions that was not rebutted by petitioner, this Court should redetermine deficiencies in tax to be zero and sustain no section 6661 additions to tax. Petitioner further argues that respondent has failed to carry her burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b). *191 I. Arbitrariness of Respondent's Determinations
*192 Petitioner seeks to show that respondent's determinations are arbitrary and, hence, come within the rule of Helvering v. Taylor, supra. The rule of Helvering v. Taylor, supra, may be simply put: a court is given sufficient cause to set aside respondent's determination of a deficiency if it is shown to the court that such determination was arbitrarily made. Id.
A. Unreported Income from an Unlawful Activity
In a case involving unreported income from an unlawful activity, where the Commissioner rests on the presumption of correctness that is said to attach to her determination, the presumption generally will fail if the taxpayer can show that the Commissioner has failed to link him with some illegal tax-generating act (such as the purchase or sale of a controlled substance). See Shriver v. Commissioner, 85 T.C. 1, 3 (1985). However, the Commissioner need not link the taxpayer to an unlawful income-generating activity to the extent that she can connect the taxpayer to unexplained cash or deposits. Tokarski v. Commissioner, 87 T.C. 74, 76 (1986). *193 Here, at least, such connection would explain only part of respondent's claim, so we will continue our inquiry as to petitioner's linkage to the unlawful activity in question. A taxpayer has made a sufficient showing that the Commissioner has failed to link him with some tax-generating unlawful activity if he establishes that the Commissioner has shown merely a peripheral contact with illegal conduct. Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980). The taxpayer has made an insufficient showing if it is established that his involvement with an unlawful activity is direct enough to support the inference that he received or used funds in the course of his engagement in that activity. Id.; see DeCavalcante v. Commissioner, 620 F.2d 23 (3d Cir. 1980), affg. Barrasso v. Commissioner, T.C. Memo. 1978-432 (supervision and control of gambling operations); Avery v. Commissioner, 574 F.2d 467 (9th Cir. 1978), affg. T.C. Memo. 1976-129 (selling drugs *194 to a Government agent); Carson v. United States, 560 F.2d 693 (5th Cir. 1977) (running a wagering business); Gerardo v. Commissioner, 552 F.2d 549 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341 (collecting gross wagering receipts); Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969) (running a wagering business). Here, petitioner argues that respondent failed to link him to any income-generating activity. Accordingly, petitioner would conclude, respondent's determinations of deficiencies are arbitrary and any presumptions of correctness that would attach to such determinations fail. Respondent's only witness was Assistant United States Attorney Welsh, whose testimony went to respondent's fraud case, and who testified to petitioner's criminal activities. Stipulated into the record by both parties, however, are the superseding indictment of petitioner and petitioner's guilty pleas to counts 9, 12, and 23 of that indictment. Thus, we must consider whether that evidence is sufficient to link petitioner to the alleged income-generating activities *195 during the periods covered by the deficiency notice. Petitioner pled guilty to count 9 of the superseding indictment, charging him with conducting a continuing criminal enterprise over a 5-year period, in violation of 21 U.S.C. section 848. Elements of engaging in a continuing criminal enterprise include, among others, a supervisory or management role in a criminal enterprise (including heroin distribution) and the obtaining of substantial income or resources from such enterprise. 21 U.S.C. sec. 848(c) (1988). Specifically, count 9 charged a continuing series of violations of 21 U.S.C. section 841(a)(1) (distribution or possession with intent to distribute a controlled substance) occurring throughout the period June 1982 to July 17, 1987, from which petitioner obtained substantial income. Count 9 referred to but did not limit such violations to those charged in counts 1, 2, 3, 4, 5, and 8 of the superseding indictment. Counts 1, 2, 3, 4, 5, and 8 charged petitioner with specific acts of distributing large amounts of heroin in 1982 and 1983. Specified in count 9 as *196 property, profits, and interests from that continuing criminal enterprise subject to forfeiture is $ 44,080 seized from petitioner in 1983. In addition, petitioner pled guilty to count 12, charging him with willfully making a false return by failing to report substantial gross income and expenditures relating to heroin sales on his Federal income tax return for 1983. On the surface, therefore, counts 9 and 12 of the superseding indictment and petitioner's guilty pleas thereto clearly link him to illegal income-generating activities during 1982 and 1983. Petitioner points out that Gregory Welsh, the Assistant United States Attorney prosecuting his criminal case, testified that, had petitioner not pled guilty, the Government need only have proved at trial three income-generating felony drug violations occurring sometime in the period covered in count 9 (mid-1982 to mid-1987) in order to obtain a conviction. Petitioner argues that the Government could have proved three violations occurring during years not here in issue. Therefore, continues petitioner, neither count 9 nor his guilty plea thereto relate directly enough to illegal unreported income in 1982 and 1983, the periods covered *197 by the deficiency notice, for the deficiency notice to be considered nonarbitrary. Such an argument pertains more to the applicability of collateral estoppel than to whether the notice of deficiency can be said to be arbitrary. Petitioner was not charged with, and did not plead guilty to, a crime that merely placed him in peripheral contact with illegal activity for the period covered by the deficiency notice. See Llorente v. Commissioner, supra.On the contrary, count 9 charged that petitioner participated in an illegal, income-generating activity during the last half of 1982 and all of 1983. Pursuant to count 9, petitioner was charged with occupying "a position of organizer, supervisor or other position of management" in connection with a continuing criminal enterprise, and it was charged that he "obtained substantial income and resources" therefrom. Specific acts of heroin distribution during 1982 and 1983 were charged. Petitioner pled guilty to, and was convicted of, counts 9 and 12. Together, the superseding indictment, guilty plea, and conviction are sufficient to support an inference linking petitioner to illegal income-generating *198 activities during 1982 and 1983, the tax years covered by the deficiency notice. Unless rebutted, that inference is sufficient to support the presumption of correctness said to attach to respondent's determination of a deficiency, so long as such determination is not rendered arbitrary by petitioner's showing that respondent has plucked the income figures in question out of the blue. See Llorente v. Commissioner, supra.
B. The Arbitrariness of the Amounts in Question
In evidence here is respondent's notice of deficiency, determining that petitioner had unreported income from heroin sales for 1982 and 1983 of $ 305,245 and $ 423,611, respectively, but offering no explanation of how those amounts were determined. Respondent's only witness at trial, Assistant United States Attorney Welsh, shed no light on that question, nor does any document or fact stipulated into evidence. Accordingly, petitioner contends that those deficiencies are arbitrary. See Helvering v. Taylor, 293 U.S. 507 (1935); Gasper v. Commissioner, 225 F.2d 284 (6th Cir. 1955), revg. and remanding Memorandum Opinions *199 of this Court dated June 30 and Nov. 25, 1953. In other words, petitioner asks us to infer the lack of a rational basis for respondent's deficiencies from her failure to demonstrate the same. That we cannot do, because the burden of proof is on petitioner to demonstrate the arbitrariness of respondent's deficiencies, Shriver v. Commissioner, 85 T.C. 1, 3 (1985): to draw such inference from respondent's inaction would be tantamount to placing the burden of proof, as to that issue, on respondent -- which we are not at liberty to do. Beyond emphasizing respondent's failure to come forward with an explanation of her deficiencies, petitioner has produced no evidence of arbitrariness. We are therefore constrained to conclude that petitioner has failed to meet his burden of proving respondent's deficiencies to be arbitrary. See id.
We would point out that the circumstances of this case are unusual, inasmuch as we have been favored with but a paucity of evidence on which to base a determination as to the possible arbitrariness of respondent's deficiencies. If respondent's deficiencies indeed are arbitrary, as petitioner contends, petitioner might, *200 for instance, have adduced evidence of that fact through the service of interrogatories on respondent requesting an explanation of how the deficiencies were computed. Had petitioner (as suggested or otherwise) required respondent to advance an explanation for her deficiencies, this Court would have been in a position to scrutinize that explanation; and if that explanation proved unsatisfactory, there would have been evidence from which we would have concluded that respondent's deficiency figures were arbitrarily derived and therefore placed the burden of going forward with the evidence on respondent. Helvering v. Taylor, supra; Gasper v. Commissioner, supra; Shriver v. Commissioner, supra.Whether the evidence petitioner might have adduced would have been sufficient to make his case, as to arbitrariness, we do not know. What we know for certain, however, is that, in the absence of such evidence, petitioner cannot prevail. C. Petitioner's Guilty Pleas
Finally, petitioner contends that his guilty pleas were motivated by a desire to protect his family and their home and *201 for personal reasons concerning his "inner self", which alleged motivation diminishes the reliability of the pleas to link him with unreported illegal income. We find that argument unpersuasive. In response to the District Court's question as to whether petitioner believed that the United States could prove its case and that was why petitioner was pleading guilty, petitioner answered "Yes, Your Honor." We will not speculate as to what else may have motivated petitioner. Moreover, we put little stock in recantations by confederates of petitioner and by others concerning criminal activities of petitioner. Those individuals were not before this Court to be cross-examined or otherwise questioned about their statements. In brief, petitioner has tried to convince us that petitioner's convictions do not necessarily lead to the conclusion that petitioner engaged in income-generating activities from drug sales during the years here in issue so as to support respondent's determinations of deficiencies. However, an inference can be drawn of such activities from the superseding indictment, petitioner's guilty plea, and his conviction. For all those reasons, the notice of deficiency supported *202 by the superseding indictment and petitioner's guilty plea cannot be said to be arbitrary and without rational foundation. II. Petitioner's Failure to Carry the Burden of Proof
It is well settled that, except where otherwise provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, the burden of proof rests with petitioner. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Where the burden so rests, failure to carry the burden results in our sustaining the determination made by respondent. By petitioner's failure to call witnesses other than Assistant United States Attorney Welsh, from the statement by his counsel at trial that his returns spoke for themselves, and from the position he has taken on brief, it is clear that petitioner is making no attempt to carry the burden of proof. We interpret petitioner's position with regard to the deficiencies as a general denial. A general denial is insufficient to carry the burden of proof. See Anastasato v. Commissioner, 794 F.2d 884, 888 (3d Cir. 1986), vacating T.C. Memo. 1985-101; Avco Delta Corp. v. United States, 540 F.2d 258 (7th Cir. 1976). *203 Accordingly, since we have determined respondent's determinations to be nonarbitrary, we will sustain the deficiencies as determined. III. Deficiencies and Section 6661 Additions to Tax
We have concluded that, with respect to deficiencies and the section 6661 additions to tax for substantial understatements, petitioner bears the burden of proving respondent's determinations incorrect. We have also concluded that petitioner has failed to carry that burden. Petitioner is thus liable for the deficiencies and section 6661 addition to tax as determined by respondent. IV. Additions to Tax for Fraud
Respondent also determined that petitioner was liable for additions to tax for fraud for 1982 and 1983 under section 6653(b)(1) and (2). A. Section 6653(b)(1)
Section 6653(b)(1) imposes an addition to tax equal to 50 percent of any underpayment in tax if any part of such underpayment is due to fraud. To prevail under section 6653(b)(1), it is well established that respondent must show both: (1) That the taxpayer has underpaid his taxes for each year, and (2) that some part of the underpayment is due to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), *204 affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). A conviction for willful falsification under section 7206(1) does not estop a taxpayer from denying fraud, Wright v. Commissioner, 84 T.C. 636, 643 (1985), nor is it necessary to a conviction under that section that the falsification result in the underpayment of tax, Goodwin v. Commissioner, 73 T.C. 215, 229 (1979), overruled as to another issue Wright v. Commissioner, supra; Considine v. Commissioner, 68 T.C. 52, 60 (1977), overruled as to another issue Wright v. Commissioner, supra.
1. Existence of An Underpayment
The first inquiry under section 6653(b)(1) is whether any underpayment exists. As relevant to this case, section 6653(c)(1) defines an "underpayment" for purposes of section 6653 as a "deficiency" *205 defined under section 6211. Nevertheless, we must keep in mind that respondent bears the burden of proving fraud, which burden she must carry by clear and convincing evidence. Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, supra ("clear and convincing" standard applies both to fraudulent intent and to existence of underpayment); Parks v. Commissioner, supra, at 663-664 (same); Hebrank v. Commissioner, supra (same). Our failure to redetermine a deficiency does not necessarily mean that there is clear and convincing evidence of an underpayment. As we stated in Parks v. Commissioner, supra at 660-661: Where, as here, respondent has prevailed on the issue of the existence of a deficiency by virtue of a taxpayer's failure to carry his burden of proof, respondent cannot rely on that failure to sustain his burden of proving fraud. We must be careful in such cases not to bootstrap a finding of fraud upon a taxpayer's failure to prove respondent's deficiency determination erroneous. * * * [Citations omitted.]
Here, respondent has presented *206 little evidence in support of the particular deficiencies she has determined. Petitioner has, in effect, presented no evidence in support of the errors he has assigned to respondent's determination; as a result, we have declined to redetermine those deficiencies because petitioner has failed to carry his burden of proof. See supra sec. II; Rule 142(a). To find an underpayment for purposes of satisfying the first part of the section 6653(b)(1) test, we must examine the evidence that exists and determine whether, for each year, it clearly and convincingly demonstrates an underpayment. If it does, then, for that year, the first part of the section 6653(b)(1) test would be satisfied, and it would be appropriate for us to turn our attention to the second part of that test. a. Receipts
Although respondent has offered little to substantiate the particular deficiencies she has determined, she has adduced substantial evidence that there were unreported receipts in both 1982 and 1983. Respondent has introduced into evidence count 9 of the superseding indictment, to which petitioner pled guilty, charging that, from approximately June 1982 to July 1987, petitioner engaged *207 in a continuing criminal enterprise. Count 9 (incorporating counts 2 through 5 and count 8 of the superseding indictment) further charges that such enterprise included distributing 50-dosage unit bags of heroin on four occasions between June 1982 and November 1982 and distributing 1500-dosage unit bags of heroin on or before October 7, 1983. Last, count 9 charges that petitioner "obtained substantial income and resources" and "obtained property, profits and interests" (including $ 44,080 in cash, forfeited under 21 U.S.C. section 848 and seized on November 15, 1983) from such enterprise. Respondent also directs our attention to count 12, to which petitioner pled guilty, charging that petitioner willfully made a false return by failing to include gross income and expenses from heroin distribution activities on his 1983 Federal income tax return. We think the foregoing adequate to conclude, by clear and convincing evidence, that petitioner had some unreported receipts from heroin distribution activities in both 1982 and 1983. b. Underpayment
The existence of unreported receipts does not, however, demonstrate that petitioner underpaid *208 tax in either 1982 or 1983. Indeed, in a merchandising business, gross receipts from sales must be reduced by cost of goods sold to determine gross income from sales. Sec. 1.61-3(a), Income Tax Regs. Moreover, gross income from sales must be reduced by all deductible expenses (including salaries, commissions, etc.) to determine taxable income from sales. See sec. 63(a). Thus, an underpayment of tax resulting from unreported gross receipts from sales is possible only if such unreported gross receipts are not exceeded by cost of goods sold and deductible expenses. [3]
*209 Nevertheless, even in criminal tax evasion cases, where the Government bears the greater burden of proof beyond a reasonable doubt, it is well settled -- "that evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any." Siravo v. United States, 377 F.2d 469, 473 (1st Cir. 1967). Accord, e.g., United States v. Garguilo, 554 F.2d 59, 62 (2d Cir. 1977); Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956); United States v. Link, 202 F.2d 592, 593 (3d Cir. 1953); United States v. Bender, 218 F.2d 869, 871 (7th Cir. 1955); Bourgue v. Commissioner, T.C. Memo. 1980-286 (applying the general rule to cost of goods sold). Where a taxpayer has not entirely omitted receipts from a particular activity from his return, the settled rule is based on the presumption that the taxpayer, having no desire to overpay tax, has reported all deductions and other offsetting amounts. See, e.g., United States v. Bender, supra at 871. *210 Where the taxpayer has failed to file a return, or his return shows no receipts from a particular activity, then the assumption that he, more readily than respondent, has access to evidence of deductions or other offsetting amounts makes the nonexistence of such amounts a fair presumption, at least as an initial matter and absent a satisfactory explanation of such nonexistence or the production of some exculpatory evidence. See Siravo v. United States, supra at 474. [4]
*211 Here, petitioner has not carried his burden of coming forth with evidence of expenses to offset unexplained receipts. Indeed, petitioner argues that there is no evidence of any narcotics distribution activities by him during 1982 and 1983. Consistent with that position, petitioner has not even attempted to show costs or expenses of narcotics distribution activities during those years or any records seized by the Government and still in their possession that would show such costs or expenses. [5] Accordingly, having concluded, by clear and convincing evidence, that petitioner had some unreported receipts from heroin distribution activities in 1982 and 1983, we find some underpayment of taxes for each such year. See Siravo v. United States, supra; United States v. Garguilo, supra; Elwert v. United States, supra; United States v. Link, supra; United States v. Bender, supra.The first part of the section 6653(b)(1) test is satisfied. *212 2. Fraudulent Intent
The second inquiry under section 6653(b)(1) concerns the taxpayer's state of mind. The existence of a fraudulent state of mind is a question of fact to be determined from the entire record. See Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Meier v. Commissioner, 91 T.C. 273, 297 (1988). As with the existence of an underpayment (our first inquiry), respondent has the burden of proof, which she must carry by clear and convincing evidence. Sec. 7454(a); Rule 142(b). In sustaining her burden of proof, respondent is not required to prove the precise amount of the underpayment resulting from fraud, but only that "any part" of the underpayment is attributable thereto. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). Respondent must make such showing for each taxable year involved. Id. An underpayment is due to fraud if we find that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. See Parks v. Commissioner, 94 T.C. 654, 661 (1990); *213 Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Respondent need not establish that tax evasion was a primary motive of petitioner, but may satisfy her burden by showing that a tax-evasion motive played any part in petitioner's conduct, including conduct also serving to conceal another crime. Recklitis v. Commissioner, supra at 909. Fraudulent intent will never be presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), but may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Recklitis v. Commissioner, supra at 910; Meier v. Commissioner, supra at 297. The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, supra; Meier v. Commissioner, supra.
Having considered all of the evidence before us, we conclude that respondent, *214 in addition to having satisfied her burden of showing underpayments of tax by petitioner resulting from his heroin distribution activities in 1982 and 1983, has satisfied her burden of clearly and convincingly showing that such underpayments were made with fraudulent intent. a. 1983
As stated in section IV. A., supra, a conviction for willful falsification under section 7206(1) does not estop a taxpayer from denying fraud. Nevertheless, petitioner did plead guilty to (and was convicted of) violating section 7206(1) by willfully making a false return by failing to include in his 1983 Federal income tax return gross income and expenses from his business of distributing heroin. We have found that such activity gave rise to an underpayment of income tax for 1983. Petitioner is thus estopped from denying the willful falsity of his return with regard to such underpayment. See Considine v. Commissioner, 68 T.C. 52, 68 (1977), overruled as to another issue Wright v. Commissioner, 84 T.C. 636, 643 (1985). We still must determine, however, whether such willfulness was with intent to evade tax known to be owing. We *215 find that it was. Petitioner filed income tax returns showing substantial tax due for both 1982 and 1983, thus demonstrating his cognizance of the duty to report income and pay tax. Moreover, petitioner has not argued, nor would we believe, that he thought those requirements to be excused in the case of illegal income; and in any event, petitioner's conviction under section 7206(1) would estop him from making that argument. Nor would it matter if one of petitioner's motives for willfully omitting income was to conceal his illegal drug-distribution activity. See Recklitis v. Commissioner, supra at 909 (fraud may be found even where tax evasion not the primary motive). In light of all the facts and circumstances, we think tax avoidance was at least one of the motivations behind petitioner's willful underreporting of income in 1983. Accordingly, we conclude that, for 1983, petitioner knew his income from the activity of heroin distribution to be reportable and failed to report that income with the intent to evade tax. [6]
*216 b. 1982
Our analysis leads to the same conclusion for 1982, notwithstanding the lack for that year of a conviction for violating section 7206(1). The facts are otherwise the same. As discussed above, petitioner has demonstrated his cognizance of the duty to report income and pay tax. Further, petitioner has not argued, nor would we believe, that he thought those requirements to be excused in the case of illegal income. Accordingly, notwithstanding the absence of a conviction under section 7206(1) for 1982, we conclude that petitioner willfully failed to include in his 1982 Federal income tax return all income from his drug-distribution activities. Thus, we are in the same position respecting 1982 as we were respecting 1983 and incorporate our above reasoning herein. Having considered petitioner's entire course of conduct, we conclude that, for 1982, petitioner knew his income from the activity of heroin distribution to be reportable and failed to report that income with intent to evade tax. 3. Conclusion
Respondent has carried her burden of proving, by clear and convincing evidence, for both 1982 and 1983 (1) some (any) underpayment of tax, and (2) petitioner's *217 fraudulent intent. Accordingly, we sustain respondent's additions to tax under section 6653(b)(1) for both 1982 and 1983. B. Section 6653(b)(2)
We apply to section 6653(b)(2) a logic similar to that which we have applied to section 6653(b)(1). Under section 6653(b)(2), a separate addition to tax (equal to 50 percent of the interest payable under section 6601) is determined with respect to "the portion" of the underpayment attributable to fraud. Again, we must be wary not to bootstrap a finding of fraud, as to any portion of the underpayment, on the taxpayer's failure of proof. Respondent bears the burden of proving the specific portion of the underpayment of tax that is attributable to fraud for purposes of applying the section 6653(b)(2) addition to tax. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Accordingly, to adjudicate an addition to tax under section 6653(b)(2), first we must examine the evidence and satisfy ourselves as to the amount that clearly and convincingly is an underpayment. Then, we must determine whether any or all of such amount clearly and convincingly *218 is due to fraud. Only to that extent can respondent prevail in her determination of an addition to tax under section 6653(b)(2). 1. Amounts of Underpayment
As previously discussed (sec. I. B.), respondent has provided us with little evidence of the amount of petitioner's underpayments for 1982 and 1983. Nevertheless, we will deal separately with each year. a. 1982
In evidence is respondent's notice of deficiency, determining that petitioner had unreported income from heroin sales for 1982 of $ 305,245, but offering no explanation of how that amount was determined. In her answer, respondent alleged certain facts concerning petitioner's receipts from heroin sales, costs of goods sold, and expenses, which support the calculations set forth in her notice of deficiency. Respondent moved to have those allegations deemed admitted. Petitioner, however, denied them, and, as a result, we denied respondent's motion. Respondent has adduced scant evidence from which calculations of petitioner's underpayment for 1982 could be found. That evidence appears limited to counts 9, 12, and 23 of the superseding indictment, to which petitioner pled guilty. Notably, however, count *219 9 of the superseding indictment charges that petitioner "obtained substantial income and resources" from a "continuing series of violations" of 21 U.S.C. section 848 (the "Drug Kingpin Statute"), beginning in approximately June of 1982. Accordingly, we are compelled to find "substantial" unreported receipts for 1982 which, as explained above, would be deemed to be unreported income. E.g., Siravo v. United States, 377 F.2d 469, 473 (1st Cir. 1967) (burden on taxpayer to come forward with evidence of offsetting expenses). Respondent has failed to provide us with any guidance as to what amount of receipts would be considered "substantial", as that term is used in count 9 of the superseding indictment. Thus, it is tempting to estimate petitioner's unreported receipts at zero, or perhaps only a nominal amount, which estimate might be justified by respondent's failure to prove any greater amount. Such an estimate, however, would be inconsistent with the finding that "substantial" sums were received. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930) ("But to allow nothing at all *220 appears inconsistent with saying that something was spent."). Accordingly, notwithstanding that the result will be speculative, we must approximate petitioner's receipts as best we can, bearing heavily upon respondent who bears the burden of proof on this issue, which burden she must carry by clear and convincing evidence. Secs. 6653(b)(2); 7454(a); Rule 142(b); see Cohan v. Commissioner, supra at 544. Based on the evidence at hand, we find that petitioner had unreported receipts, and therefore unreported income, e.g, Siravo v. United States, supra, of $ 500 in 1982.[7] See Cohan v. Commissioner, supra.
*221 b. 1983
Except with regard to the seizure of $ 44,080 from petitioner during 1983 and the conviction under section 7206(1) for willfully making a false return for 1983, the facts at issue with regard to 1982 are similar to those at issue for 1983 (respondent's notice of deficiency determined that petitioner had unreported income from heroin sales for 1983 of $ 423,611). Notwithstanding that forfeiture and conviction, we will draw no distinction between 1982 and 1983. Pursuant to count 9 of the superseding indictment, the forfeited amount constituted undifferentiated "property, profits and interests" from petitioner's engagement in a criminal enterprise. The existence of cash is dubious evidence of sales, however, and may in whole or part represent petitioner's investment in his business rather than his receipts therefrom. Count 9 of the superseding indictment also charges that petitioner "obtained substantial income and resources" from his criminal activity in 1983, which, unlike the cash seized, clearly constitutes receipts. Accordingly, petitioner had "substantial" unreported receipts, and therefore unreported income, e.g., Siravo v. United States, supra, *222 in 1983. Based on the evidence at hand, we find that petitioner had $ 500 of unreported income in 1983. Cohan v. Commissioner, supra.
2. Fraudulent intent
Our above discussion of fraudulent intent, with regard to section 6653(b)(1), is applicable here and will not be repeated. It suffices to emphasize that petitioner has neither argued, nor would we believe, that he thought the duty to report income and pay tax excused in the case of illegal income. For the reasons explained more fully above, we conclude that petitioner willfully failed to report all income from his criminal activities in 1982 and 1983. 3. Conclusion
The "portion of the underpayment * * * attributable to fraud" is the portion of the underpayment resulting from unreported income of $ 500 in both 1982 and 1983. Thus, the addition to tax under section 6653(b)(2), for each year, is equal to 50 percent of the interest payable under section 6601 with respect to the underpayment resulting from unreported income of $ 500. Decision will be entered under Rule 155. Footnotes
1. Counsel for petitioner expressed this fundamental point in additional ways in response to questions from the Court. E.g., he responded that the Government had failed in its proof and that it had shown no basis for the deficiency other than that it sent out a deficiency notice.↩
2. To hold that a deficiency notice is invalid within the rule of Helvering v. Taylor, 293 U.S. 507 (1935), because it constitutes a "naked assessment", is not to hold that it is invalid in the usual sense or that this Court lacks jurisdiction over such notice. See Suarez v. Commissioner, 58 T.C. 792, 814 (1972), overruled as to another issue Guzzetta v. Commissioner, 78 T.C. 173 (1982) (" Helvering v. Taylor, 293 U.S. 507↩ (1935), teaches that when a petitioner makes a showing casting doubt on the validity of a deficiency determination, the statutory notice itself is not rendered void; the result of such showing is that the respondent must then come forward with evidence to establish the existence and amount of any deficiency."). To avoid confusion, we will refer to a notice of deficiency held to constitute a naked assessment as being "arbitrary".
3. In this case, a showing of gross income would suffice to demonstrate an underpayment, at least for 1983, because, for that year, petitioner was entitled to no deductions or credits respecting his illegal drug sales. Sec. 280E. Sec. 280E disallows any otherwise allowable deduction or credit for amounts paid or incurred with respect to the sale of certain controlled substances such as the ones distributed by petitioner. Sec. 280E deals only with deductions and credits, however, and does not disallow exclusions from gross income on account of cost of goods sold. S. Rept. 97-494, at 309 (1982). Sec. 280E is effective for amounts paid or incurred after Sept. 3, 1982, in tax years ending after such date. Id.↩ Because such exclusions may equal (or exceed) gross receipts, however, a showing of gross receipts is insufficient to demonstrate taxable income, even where, as here, no deductions are available.
4. Of course, a taxpayer may carry his burden of coming forth with evidence of expenses to offset unexplained receipts. In such a case, we have held that the presumption underlying the settled rule loses all force. In Perez v. Commissioner, T.C. Memo. 1974-211, there was substantial evidence demonstrating that the taxpayer, who owned a furniture repair business, made cash payments to various employees who insisted on such method of payment in order to avoid reporting those payments on their income tax returns. We therefore found a solid basis for the assumption that the taxpayer had unclaimed deductions that could have offset unreported gross income and demonstrated the absence of any underpayment. We stated the general rule as follows: "once the Government establishes the existence of unreported income and allows the deductions claimed on the return, it does not have the further burden of proving the negative that the taxpayer did not have any additional deductions." Id. Nevertheless, we declined to apply the general rule on the theory that the underlying assumption of that rule -- that the taxpayer would not knowingly have failed to report all exclusions and deductions -- had been rebutted and therefore lost all force. See also Rivera v. Commissioner, T.C. Memo. 1979-343↩ (acknowledging the propriety of declining to apply the general rule where the underlying presumption is rebutted by evidence that the taxpayer had unclaimed deductions that could have offset unreported gross income but finding insufficient evidence of that kind in that case).
5. Count 12 of the indictment to which petitioner pled guilty in 1987 charged petitioner with violating sec. 7206(1) by willfully making a false return by failing to include in his 1983 Federal income tax return gross income and expenses from the business of distributing heroin. As stated, petitioner has made the tactical decision to deny that he engaged in that activity during 1982 or 1983 and (apart from the Government's ambiguous concession in the indictment), therefore, has failed to adduce evidence of such "expenses". We need not resolve any apparent inconsistency, however, since, given the provisions of sec. 280E (see supra note 3), petitioner would not, for 1983, be entitled to any deductions for expenses incurred in connection with his illegal drug sales. Although petitioner would not be precluded by sec. 280E from taking account of any cost of goods sold (see supra note 3), the terms of his indictment (and plea agreement) are sufficiently ambiguous that we will not interpret his conviction for violating sec. 7206(1)↩ as a concession by respondent that, indeed, petitioner did, in 1983, incur any cost of goods sold.
6. This plainly is not a case like that suggested by Judge Featherston in his dissent in Goodwin v. Commissioner, 73 T.C. 215, 235↩ (1979) -- a taxpayer willfully falsifying his return in order to cover up the source of illegal income but likewise omitting a legitimate deduction so as not to have an underpayment or evade tax. In such a case it would be evident that the taxpayer, who by design refrains from understating his tax, is not driven (even in part) by a tax-evasion motive; in the case at hand, petitioner has not refrained from understating his tax and it is not at all evident that tax evasion was not a motivating factor in the understatements at issue.
7. Five hundred dollars is not the maximum amount we consider consistent with "substantial" unreported receipts from the criminal activities engaged in by petitioner. Rather it is the amount that, "bearing heavily * * * upon [respondent] whose inexactitude is of [her] own making", we consider supported by the evidence in this case. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). That evidence does not support (although it does not disprove) any greater amount. Accordingly, respondent's failure to prove any greater amount does not bring into question our determination of a greater deficiency, which determination is based on petitioner's↩ failure of proof in that regard.