T.C. Memo. 1995-516


UNITED STATES TAX COURT


JOHN B. MATHERS, SR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4702-94.          Filed October 30, 1995.


Roland J. Mestayer, Jr., and Elliot G. Mestayer, for

petitioner.

Marshall R. Jones, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies in and

additions to petitioner's Federal income taxes as follows:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1)[1] | Sec. 6653(b)(2)[1] | Sec. 6654 |
| 1982 | $38,926 | $19,463 | [2] | $3,790 |
| 1983 | 49,503 | 24,752 | [2] | 3,033 |
| 1984 | 45,510 | 22,755 | [2] | 2,861 |
| 1985 | 51,467 | 25,734 | [2] | 2,949 |
| 1986 | 16,945 | 12,709 | [2] | 820 |

[1]For 1986, secs. 6653(b)(1)(A) and 6653(b)(1)(B),
respectively.
[2]50 percent of the interest due on the deficiency.

Respondent's amended answer asserted the delinquency and negligence additions to tax under sections 6651 and 6653(a), respectively, in the alternative to the fraud addition to tax. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues remaining for decision are: (1) Whether payments received by petitioner constituted loan repayments or constructive dividends; (2) whether payments made to petitioner's son constituted constructive dividends to petitioner; (3) whether petitioner is liable for the fraud addition to tax, or, in the alternative, for the delinquency and negligence additions to tax; and (4) whether petitioner is liable for the addition to tax for failure to pay estimated taxes.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in Mobile, Alabama.

Petitioner graduated from high school and attended 2 years of college. Petitioner worked in the finance industry before entering the retail furniture business in 1960.

During the years in issue, petitioner served as president and principal operating officer of Furniture Barn, Inc. (FBI). Petitioner owned approximately 97 percent of the outstanding stock of FBI. Petitioner did not receive a salary from FBI during the years in issue. FBI paid petitioner's personal expenses, including food, household expenses, and other living expenses. The following amounts represent expenditures by FBI for the personal benefit of petitioner:

| Year | Amount |
|------|--------|
| 1982 | $36,511.39 |
| 1983 | 53,743.85 |
| 1984 | 60,469.07 |
| 1985 | 54,681.48 |
| 1986 | 33,599.64 |

Petitioner also used corporate assets for personal purposes during the years in issue.

Petitioner's son, John B. Mathers, Jr. (Mathers, Jr.), worked at FBI in sales management and served as vice president. He received a salary from FBI for his services. During the years in issue, Mathers, Jr. wrote numerous checks from the FBI account to pay his personal expenses. Petitioner had knowledge of at least some of these checks. Petitioner had control over the check writing of Mathers, Jr. but did not require Mathers, Jr. to get approval before writing checks for his personal benefit. Petitioner never told Mathers, Jr. that he was taking too much money out of FBI. On previous occasions, petitioner had helped Mathers, Jr. through financially difficult times.

The following amounts were paid by FBI solely for the personal benefit of Mathers, Jr.:

| Year | Amount |
|------|--------|
| 1982 | $28,947.29 |
| 1983 | 25,811.92 |
| 1984 | 18,363.25 |
| 1985 | 25,667.61 |
| 1986 | 9,269.58 |

The parties have stipulated that, if any of the amounts paid by FBI for the personal benefit of petitioner or Mathers, Jr. are taxable to petitioner, they constitute constructive dividends from FBI.

Petitioner was audited in the 1960's. In 1972, this Court decided that he had unreported taxable income in 1964; an opinion was rendered as Mathers v. Commissioner, 57 T.C. 666 (1972). Petitioner did not file individual Federal income tax returns for any year from 1974 through 1986. In late 1983, the Internal Revenue Service began an audit of petitioner. After the initial interview, it became apparent that FBI was the source of petitioner's funds. The audit expanded to include FBI as well as petitioner. Because of petitioner's failure to keep personal income records, it was necessary to use the FBI records to reconstruct petitioner's income. Petitioner was given time to organize the records of FBI and to file amended returns for FBI for the years in issue. The audit took 4 years to complete because of the lack of financial records for petitioner and FBI.

During the investigation, petitioner denied having income from wages, dividends, sales of assets, gifts, or inheritances. Petitioner represented at one point that his average cash on hand was $100, but later represented that he had up to $10,000 cash in a safe in his house. Petitioner indicated to the investigating agents that his source of funds was the repayment of loans he made to FBI some years earlier. Petitioner asserted to the agents that the loans were made to FBI out of proceeds he received from sales of several furniture stores during the late 1960's and early 1970's. During the audit, petitioner did not produce any documentary evidence, such as promissory notes or repayment schedules, to verify his claim of such loans to FBI.

Petitioner prepared and filed Federal income tax returns for FBI from 1982 to 1985. The 1982 and 1984 returns were each filed approximately 1 year late. The corporate returns did not report any compensation paid to officers or dividends paid to shareholders, although Mathers, Jr. was an officer and received a salary from the corporation.

Schedule L of Form 1120, U.S. Corporation Income Tax Return, on the FBI returns set forth balances in the "Loans from stockholders" entry and in the "Mortgages, notes, bonds payable in 1 year or more" entry (collectively referred to as loans from stockholders) between 1982 and 1985, which allegedly represented the loans made to FBI by petitioner. The balances shown decreased, however, by only $36,000 between 1982 and 1985. This

decrease did not reflect the amount of petitioner's personal expenses, totaling approximately $239,000, that were paid by FBI over the same time period.

After meeting with the agents assigned to his case, petitioner sought assistance from an accountant, G. Marshall Burden (Burden), in preparing amended returns for FBI. Burden relied on the prior FBI returns prepared by petitioner to arrive at the beginning loans from stockholders balance on the amended returns. Petitioner possessed no other documents to substantiate the alleged loans. The loans from stockholders balance shown on the amended returns declined in accordance with the FBI payment of the personal expenses of both petitioner and Mathers, Jr. In June 1989, Burden filed further amended returns to eliminate the allocation to the loans from stockholders balance of Mathers, Jr.'s personal expense payments in prior years.

OPINION

Petitioner contends that the amounts he received from FBI were in repayment of loans he made to FBI, and, therefore, those amounts are not taxable to him. He claims that he had no obligation to file tax returns for the years in issue because he had no taxable income.

Respondent contends that the payments from FBI for the benefit of petitioner and his son constituted constructive dividends and are taxable to petitioner. Respondent further argues that petitioner knew that these payments were income to

him and that his failure to file income tax returns reporting that income and to pay tax on the income are due to fraud.

The issues of taxability of the payments and fraud turn on the credibility of petitioner's claim that the disbursements on his behalf were repayments to him of loans previously made to the corporation. Petitioner's contentions in the context of this case are simply not credible. He presented no contemporaneous documentation that the distributions for his benefit during the years in issue were intended to be repayments of loans.

## Payments for the Benefit of Petitioner

At trial, the evidence introduced by petitioner consisted primarily of his uncorroborated testimony. We are not required to accept petitioner's testimony that is improbable or vague. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. T.C. Memo. 1969-159. His testimony is contradicted by the minimal records that he created. The Federal income tax returns prepared by petitioner for FBI do not show a contemporaneous intent to treat the payments from FBI as loan repayments. From January 1, 1980, to December 31, 1985, petitioner showed a reduction of only $36,000 in the loans from stockholders entry on the returns he prepared for FBI, while payments by FBI for petitioner's sole benefit totaled approximately $239,000 for the same period. Larger adjustments to the loans from stockholders balance were not reflected until the amended returns were prepared and filed by Burden after the

audit began.  Burden relied solely on the prior returns, prepared by petitioner, in arriving at the beginning loans from stockholders entry he used in preparing the amended returns.  No other documentation, such as promissory notes or repayment schedules, was available to verify the existence of such loans. Petitioner, with prior experience in the finance industry, understood the importance of documenting loans, if indeed loans existed.  Attempts by petitioner to characterize retroactively the payments he received as loan repayments are not credible. See Noble v. Commissioner, 368 F.2d 439 (9th Cir. 1966), affg. T.C. Memo. 1965-84.

We conclude, therefore, that the payments from FBI to petitioner were not loan repayments.  See Reis v. Commissioner, T.C. Memo. 1995-231; Cordes v. Commissioner, T.C. Memo. 1994-377. Pursuant to the parties' stipulation, the payments for the personal benefit of petitioner are constructive dividends.

Payments for the Benefit of Mathers, Jr.

"The power to dispose of income is the equivalent of ownership of it.  The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it."  Helvering v. Horst, 311 U.S. 112, 118 (1940).  The assignment of income principle has been extended to situations such as this instance where one with a controlling interest in the corporation has the power to direct corporate funds to another.  See Green v. United

States, 460 F.2d 412, 419 (5th Cir. 1972); Sammons v. United States, 433 F.2d 728, 730 (5th Cir. 1970). To determine whether petitioner should be taxed on the receipt of FBI funds by Mathers, Jr., we take into account "whether the taxpayer has exercised substantial influence over the corporate action whose tax consequences are at issue." Green v. United States, supra at 420.

Petitioner, as president and 97-percent shareholder in FBI, had the power to control the distribution of FBI funds. Petitioner admitted that he had control over the FBI checking account. Petitioner possessed the power to require Mathers, Jr. to stop writing personal expense checks on the FBI account. Petitioner chose not to use this power. Instead, petitioner furnished Mathers, Jr. with complete access to FBI funds and knowingly permitted Mathers, Jr.'s use of those funds for his personal expenses.

The facts of this case are similar to the situation presented in Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225 (1971). In that case, the taxpayer was president and 50-percent shareholder in a corporation. The taxpayer played a very important role in the corporation's acquisition of a boat. His sons, with his knowledge, frequently used the boat for nonbusiness purposes. The Court found that the taxpayer received a constructive dividend from the use of the boat by his sons, because he "was in complete control of the events". Id. at 1240.

Here, too, petitioner must include in income those amounts that FBI paid for the personal benefit of Mathers, Jr.

Fraud

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). For 1982, 1983, 1984, and 1985, section 6653(b)(1) provides for an addition to tax equal to 50 percent of the entire underpayment when any part of an underpayment is due to fraud, and section 6653(b)(2) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 for that portion of the underpayment that is attributable to fraud. For 1986, section 6653(b)(1)(A) provides for an addition to tax equal to 75 percent of the underpayment attributable to fraud, and section 6653(b)(1)(B) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 for that portion that is attributable to fraud.

Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). For 1982, 1983, 1984, and 1985, respondent must prove the specific portion of the underpayment of tax attributable to fraud for purposes of section 6653(b)(2). For 1986, section 6653(b)(2), provides:

(2) Determination of portion attributable to fraud.--If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer established is not attributable to fraud.

In regard to proving an underpayment due to fraud, respondent cannot rely on petitioner's failure to satisfy his burden of proof as to the deficiency. See DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Respondent's burden with respect to fraudulent intent is met if it is shown that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

The failure to file tax returns, without more, is not conclusive proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes. Stoltzfus v. United States, supra; Cirillo v. Commissioner, 314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part T.C. Memo. 1961-192; Kotmair v. Commissioner, 86 T.C. 1253 (1986). Failure to file, however, may be considered in connection with other facts in determining whether an underpayment of tax is due to fraud.

Citing Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992), respondent relies here on various indicia of fraud in addition to failure to file tax returns, including understatement of income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to make estimated tax payments. In this case, however, all of those factors depend on the validity of petitioner's contention that the distributions from the corporation for his benefit were repayments of loans and on his alleged good-faith belief that he, therefore, did not have any taxable income and was not required to file returns. For various reasons, we conclude that petitioner's explanations with respect to the purported loans are so implausible that we are convinced that his failure to file returns and report the income reflected in the distributions from the corporation for his benefit was due to fraud.

First, as indicated above, petitioner's contention that the distributions represented loan repayments to him is unsupported by any independent evidence and is contradicted by the corporate tax returns that he prepared and filed. Second, in view of his business experience, it is not credible that he believed that over a period of 13 years he could withdraw substantial sums of money from the corporation for his living expenses, report no income from the services that he performed on behalf of the corporation or dividends from the corporation, and have no income tax liability and no obligation to file tax returns. His position in this regard is too untenable to be believed.

Petitioner also had experience in this Court, as reflected in an opinion rendered not long before he commenced his pattern of failing to file returns. See Mathers v. Commissioner, 57 T.C. 666 (1972). Petitioner apparently was sufficiently knowledgeable to prepare the corporate tax returns, and he has not suggested that he relied on any professional advice that he had no obligation to file individual returns. Under these circumstances, the use of the corporation to pay his personal expenses is clear and convincing evidence of fraud. See Benes v. Commissioner, 42 T.C. 358, 384 (1964), affd. 355 F.2d 929 (6th Cir. 1966); Hedlund v. Commissioner, T.C. Memo. 1993-455; Kahrahb Restaurant, Inc. v. Commissioner, T.C. Memo. 1992-263.

We are convinced that petitioner underpaid taxes due for the years in issue when he failed to report as income the

distributions from the corporation for his benefit; that he knew that these distributions were income to him; and that his failure to file returns, to report the income, and to pay tax on that income was due to fraud.  Therefore, respondent has established these elements by clear and convincing evidence, and the additions to tax under section 6653(b)(1) for 1982, 1983, 1984, and 1985 and under section 6653(b)(1)(A) and (B) for 1986 will be sustained.

It is not clear, however, that petitioner knew or should have known that the payments withdrawn from the corporation by his son would be taxable to him as constructive dividends.  With respect to those amounts for 1982, 1983, 1984, and 1985, respondent has not satisfied her burden of proving that petitioner's failure to report the amounts paid for his son and to pay tax on them was due to fraud.  Therefore, we do not sustain the 50 percent of the interest portion attributable to those payments under section 6653(b)(2) for those years.  See Franklin v. Commissioner, T.C. Memo. 1993-184.  On the other hand, petitioner has not satisfied his burden of proving, for 1986, that the omissions with respect to distributions for the benefit of his son were not due to fraud.  See sec. 6653(b)(2), quoted above.

Because we have upheld respondent's determination with respect to the additions to tax for fraud, we need not address the alternative additions to tax for negligence and for failure

to file returns.  Our determinations with respect to fraud, however, necessarily reject any argument that the failure to file returns was due to reasonable cause or that the underpayments of tax were not at least due to negligence.

## Section 6654 Addition to Tax

Respondent also determined that petitioner is liable for the addition to tax under section 6654 for the years in issue. Section 6654 provides an addition to tax for failure to make timely and sufficient payments of estimated tax.

Petitioner argues that, because he did not have taxable income for any of the years in issue, he was not required to pay estimated taxes.  We have determined, however, that petitioner had taxable income during the years in issue.

The section 6654 addition to tax is mandatory unless petitioner can place himself within one of the computational exceptions provided by section 6654.  Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  None of the exceptions of section 6654(d) for 1982, 1983, and 1984, or section 6654(e) for 1985 and 1986, apply in this instance.

Petitioner has further asserted that the imposition of this addition to tax would be inequitable in this case because he had an "honest" belief that he did not have taxable income during the years in issue.  "This section has no provision relating to reasonable cause and lack of willful neglect.  It is mandatory and extenuating circumstances are irrelevant."  Estate of Ruben

<u>v. Commissioner</u>, 33 T.C. 1071, 1072 (1960).  Accordingly, we sustain respondent's determination on this issue.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.