MURRAY F. HARDESTY AND MADELINE A. HARDESTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardesty v. Commissioner
Docket No. 10006-90
United States Tax Court
T.C. Memo 1993-225; 1993 Tax Ct. Memo LEXIS 231; 65 T.C.M. (CCH) 2743; May 24, 1993, Filed *231 Respondent determined income tax deficiencies against petitioners for their tax years 1982 through 1985. Respondent also determined additions to tax for fraud against petitioner-husband under sec. 6653(b)(1) and (2), I.R.C., for such years. 1. Held: With respect to respondent's deficiency determinations, petitioners fail to carry their burden of proof (except to the extent of a concession by respondent and one item respecting which we find in part for petitioners, on account of evidence adduced by respondent). Rule 142(a), Tax Court Rules of Practice and Procedure. Except to that extent, respondent's deficiencies therefore are sustained. 2. Held, further, with respect to respondent's additions to tax for fraud under sec. 6653(b)(1), I.R.C., respondent has sustained her burden of proving, by clear and convincing evidence, for each year at issue: (1) Some (any) underpayment, and (2) fraudulent intent as to at least a portion thereof. 3. Held, further, with respect to respondent's additions to tax for fraud under sec. 6653(b)(2), I.R.C., respondent has proved, by clear and convincing evidence, only a portion of the claimed underpayment for each year *232 at issue. We therefore sustain respondent's addition to tax under sec. 6653(b)(2), I.R.C., only in part for each year. Franklin v. Commissioner, T.C. Memo. 1993-184. For petitioners: Bruce D. Woolpert. For respondent: Michael L. Boman and Frank Schuler. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By a notice of deficiency, dated February 20, 1990, respondent determined the following income tax deficiencies and additions to tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(2)
6653(b)(1)
6653(b)(2)
6661
1982
$ 49,208.13
($ 652.70)
$ 24,604.07
[1]
$ 12,302.03
1983
30,338.35
(107.01)
15,169.18
[1]
7,584.59
1984
4,036.96
0    2,018.48
[1]
0   1985
28,271.42
(726.51)
14,135.71
[1]
7,067.86
The delinquency penalty for failure to pay, which previously had been assessed under section 6651(a)(2), was removed by respondent's notice of deficiency and replaced *233 with additions to tax for fraud under section 6653(b)(1) and (2). By amendment to answer, respondent also determined (i) an increased fraud penalty, under section 6653(b)(1), for 1985 (for a total of $ 28,244.28), (ii) an increased fraud penalty, under section 6653(b)(2), for 1985 (for a total of 50 percent of the interest due on an underpayment of $ 56,488.57), and (iii) additions to tax for negligence, failure to file, and failure to pay, in the alternative to fraud, as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
6651(a)(1)
6651(a)(2)
6653(a)(1)
6653(a)(2)
1982
$ 652.70
[1]
[2]
1983
107.01
[1]
[2]
1984
0   [1]
[2]
1985
[1]
726.52
[1]
[2]
Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession by respondent [1] and *234 concessions by petitioners, [2] the issues remaining for decision are: (1) Whether petitioners are entitled to a $ 18,577.17 deduction for "shareholder expense", as claimed on their 1982 return; (2) whether respondent's determination of unreported income for 1982 should be reduced by $ 10,262; (3) whether petitioners are entitled to deductions claimed for charitable contributions of $ 4,021 and $ 9,995 for 1984 and 1985, respectively, in excess of the amounts allowed by respondent; (4) whether petitioner Murray F. Hardesty is liable for the additions to tax for fraud, imposed by section 6653(b)(1) and (2); (5) whether, in the alternative to fraud, petitioners are liable for additions to tax for negligence, failure to file, and failure to pay, imposed by sections 6653(a)(1) and (2), and 6651(a)(1) and (2), respectively; and (6) whether petitioners are liable for the addition to tax for substantial understatement, imposed by section 6661. *235 Background By our order dated November 7, 1991, facts contained in respondent's proposed stipulation of facts, and documents attached thereto, were deemed established for purposes of this case, pursuant to Rule 91(f)(3). That stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners herein, husband and wife, resided in Topeka, Kansas, when they filed the petition in this case. Petitioners filed joint United States Income Tax Returns for the taxable years here at issue. For convenience, the term "petitioner", when used in the singular, hereinafter will refer only to petitioner Murray F. Hardesty. Petitioner's Education and Sophistication
Petitioner was graduated from Washburn University in 1949 with a bachelor of business administration degree. He was graduated from the Washburn University School of Law in 1955. Petitioner is a member of the Kansas bar and practices law in Topeka, Kansas. More than half of petitioner's practice is tax related. Petitioner is a member of the Topeka, Kansas, and American Bar Associations, and has served as member or chairman of various bar committees, including chairman of the Tax Section *236 of the Kansas Bar Association, chairman of the Professional Economics Committee of the Kansas Bar Association, and vice president of the Administrative Procedure Committee, Tax Section of the American Bar Association. Petitioner has served as an adjunct assistant professor at Washburn University, teaching estate planning. He is the author of several tax articles and has lectured at continuing professional education classes for tax accountants. Petitioner has represented taxpayers in tax audits, in the Tax Court, and in criminal and civil proceedings in other Federal courts. Petitioner's Practice and the Reorganization
Prior to April 1, 1982, petitioner practiced as a shareholder-employee of Hardesty & Puckett Chartered and of Hardesty, Hall, Schlosser & Puckett, Chartered (both hereinafter referred to as H & P Chartered). Subsequent to March 31, 1982, H & P Chartered continued as a corporation, but was a service company, rather than a professional corporation (hereinafter referred to as H & P Service). H & P Service rented space to attorneys who were formerly with H & P Chartered, provided secretarial services to them, and collected fees on behalf of the individual attorneys; *237 petitioner practiced as a sole proprietor. Hereinafter, except where distinction is necessary, both H & P Chartered and H & P Service shall be referred to as H & P. Discussion I. The Deficiencies
A. Shareholder Expense
On their 1982 return, petitioners claimed a $ 18,577.17 deduction for "shareholder expense". Petitioners have offered various, inconsistent bases for that deduction. Petitioner told respondent's agent, Kenneth Sloop, that the $ 18,577.17 expense was for work in progress (purchased by petitioner from the other attorneys of H & P upon its reorganization). Subsequently, according to another of respondent's agents, John Stambaugh, whose testimony we find to be credible, petitioner stated that the $ 18,577.17 expense represented a reduction in the fair-market value of H & P stock. At trial and on brief, petitioners remain faithful to the explanation given to agent Sloop, insisting that the deduction represented payment for work in progress. Petitioners bear the burden of proving that they are entitled to that deduction. Rule 142(a). Petitioners have failed, in two respects, to demonstrate their entitlement to the claimed deduction. First, petitioners *238 have failed even to demonstrate that $ 18,577.17 ever was paid. Petitioner testified that checks were made out to the other principals of H & P, but he has failed to substantiate that claim. In light of the fact that evidence of such checks readily would be available if petitioners' story were true, we accord no weight to petitioner's testimony, since petitioners have failed to produce such evidence. We are therefore unable to conclude even that the $ 18,577.17 was paid. Second, assuming arguendo that the $ 18,577.17 was paid, petitioners have not convinced us of their entitlement to a deduction for such payment under, we assume, section 162. Petitioner testified that there were work sheets, on which petitioner and the other principals of H & P allegedly computed who owed whom how much for work done but unbilled. Petitioner testified that he provided respondent with his only copy of those work sheets, which copy was subsequently lost. We think that story both convenient and implausible, given petitioner's experience as a tax practitioner. Moreover, Bryon Schlosser, Esq., a shareholder in H & P at the time of the reorganization, testified for respondent that, to the best of *239 his recollection, there was no payment made that could have been considered purchase of work in progress. Petitioners did not cross-examine Mr. Schlosser on that point, nor did they offer any evidence in support of petitioner's testimony that the shareholders of H & P made payments to each other for work in progress (for example, canceled checks or the testimony of any former H & P shareholder from whom petitioner purchased work in progress). In light of the lack of any substantiation whatever, petitioner's inconsistent assertions to respondent's agents, and Bryon Schlosser's testimony, we conclude that petitioners have failed to carry their burden of proof. Rule 142(a). Respondent's determination, in this respect, is sustained. B. Unreported Income
Petitioners claim that respondent improperly determined unreported income of $ 10,262 in 1982, based on deposits into petitioner's personal savings account at Commerce Bank. That amount comprises payments by several former shareholders of H & P Chartered. Petitioners argue that those payments, made in May 1982, represent allocated expenses, payable by those former shareholders to H & P, for associate attorney time and overhead *240 expenses incurred during April 1982. Petitioners further argue that, at petitioner's direction, those payments were placed into petitioner's savings account because there was no firm account in which they could have been placed to earn interest. [3] In other words, petitioners claim that petitioner acted only as the agent of H & P Service when the $ 10,262 was deposited in his personal account. Byron Schlosser testified that, at that time, petitioner had not yet decided whether to use an existing corporation or a new one for the service corporation. He stated that he made his check out to petitioner, personally, with the expectation that petitioner would hold the funds on behalf of whatever service corporation was to be used. If petitioner did deposit the $ 10,262 as agent for H & P Service, then it would follow that, despite appearances, the funds were not petitioner's, and thus do not represent income to petitioners. *241 Petitioners have failed, however, to sustain their burden of proof. See Rule 142(a). Petitioners have offered no evidence that they paid the $ 10,262 over to H & P Service or that H & P Service or any other entity reported the $ 10,262 as gross income. That evidence would be readily available if petitioners' story were true, and the absence of such evidence precludes us from according any weight whatever to petitioners' explanation. We find that petitioners maintained control over the $ 10,262, without restriction, despite the apparent impropriety of such action. Funds used by the taxpayer without restriction represent income, even if taken from another without authority. See James v. United States, 366 U.S. 213 (1961). Accordingly, we sustain respondent's determination that the $ 10,262 represents unreported income in 1982. Moreover, even where the burden of proof is on respondent, bank deposits are prima facie evidence of taxable income; the burden is on petitioners to demonstrate the nontaxable nature of any bank deposits. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We think petitioner's unsubstantiated *242 testimony that he acted as agent for the firm insufficient to carry that burden, as is Mr. Schlosser's testimony that he expected petitioner to do so. Petitioner's explanation that H & P may not have had an interest-bearing account is implausible and buttresses our conclusion. Not only do we believe petitioner would have known, simply as an active shareholder of the firm, whether H & P had a savings account at that time, but we think petitioner surely knew (and would have remembered at trial) the circumstances under which he deposited over $ 10,000 of H & P's funds into his own personal savings account. Petitioner apparently conceded during his testimony that H & P maintained an interest-bearing money market fund during at least part of 1983. When asked if he had not earlier stated that the firm did not have a savings account, he replied: "I said I don't know whether we did or not." According to petitioner's testimony, therefore, he does not know whether he deposited the $ 10,262 as H & P's agent -- because the firm lacked a savings account -- or for some other reason entirely. We find that explanation implausible. C. Charitable Contributions
Petitioners claimed deductions *243 for charitable contributions in the amounts of $ 4,021 and $ 9,995 for their 1984 and 1985 tax years, respectively. Respondent substantially disallowed those deductions. Petitioners failed to offer more than a general denial in support of their request for a redetermination. If there were nothing more, that failure would mean that petitioners fail to carry their burden of proof. Respondent, however, has presented us with more. In the course of arguing her case with regard to fraud, discussed below, respondent has introduced evidence that is clear and convincing and shows the respective portions of those deductions that improperly were claimed by petitioners. As it happens, such evidence also establishes the respective portions of those deductions that properly were claimed by petitioners. To that extent, therefore, petitioner's burden of proof is satisfied, and we do not sustain respondent's determinations. II. Fraud
Respondent has determined additions to tax under section 6653(b)(1) and (2) against petitioner for all years at issue. Section 6653(b)(1) imposes an addition to tax equal to 50 percent of any underpayment in tax if any part of such underpayment is *244 due to fraud. To prevail under section 6653(b)(1), it is well established that respondent must show that: (1) The taxpayer has underpaid his taxes for each year, and (2) some part of the underpayment is due to fraud. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). When an addition to tax under section 6653(b)(1) is asserted in connection with the income tax, the term "underpayment" is defined to mean the same (with some modification) as the term "deficiency". See secs. 6653(c)(1), 6211(a). Nevertheless, we must not lose sight of the fact that respondent bears the burden of proving fraud, which burden she must carry by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Thus, notwithstanding that respondent has prevailed with regard to her determination of a deficiency, it is not necessarily so that there is clear and convincing evidence of an underpayment. Generally, a taxpayer bears the burden of showing by a preponderance of the evidence that respondent's determination *245 of a deficiency is in error. See Rule 142(a). Where a taxpayer has failed to carry that burden, all that can be said for certain, without an evaluation of the evidence, is that the taxpayer has failed to show that it is more probable than not that respondent's determination of a deficiency is erroneous. It may have been that the taxpayer failed to introduce any evidence at all, that the Court failed to accord the taxpayer's evidence any weight, or that respondent's evidence outweighed the taxpayer's evidence. Without an evaluation of the evidence, however, it is impossible to determine among those alternatives. Accordingly, we have cautioned against bootstrapping a finding of fraud on a taxpayer's failure to prove respondent's deficiency determination erroneous. Parks v. Commissioner, supra at 661. To find that an underpayment exists for purposes of section 6653(b)(1), we must satisfy ourselves that the evidence clearly and convincingly establishes an underpayment. If by clear and convincing evidence we find an underpayment of any amount, then the first prong of the section 6653(b)(1) test is met, and we will turn our attention to the second *246 prong of that test. The second prong is met if we are satisfied that the evidence clearly and convincingly establishes that some (any) portion of the underpayment is due to fraud. An underpayment is due to fraud if we find that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. See Parks v. Commissioner, supra at 661; Truesdell v. Commissioner, supra at 1301; Hebrank v. Commissioner, supra at 642. The application of similar logic to section 6653(b)(2) is inescapable. Under section 6653(b)(2), a separate addition to tax (equal to 50 percent of the interest payable under section 6601) is determined with respect to "the portion" of the underpayment attributable to fraud. Again, we must be wary not to bootstrap a finding of fraud, as to any portion of the underpayment, on the taxpayer's failure of proof. Accordingly, to adjudicate an addition to tax under section 6653(b)(2), first we must examine the evidence and satisfy ourselves as to the amount that clearly and convincingly *247 is an underpayment. Franklin v. Commissioner, T.C. Memo. 1993-184. Then, we must determine whether any or all of such amount clearly and convincingly is due to fraud. Only to that extent can respondent prevail in her determination of an addition to tax under section 6653(b)(2). Id.
A. As to Which Items has Respondent Demonstrated an Underpayment? 1. The Contested Deficiency Items
We will not here recount the above discussion of the contested deficiency items (shareholder expense and unreported income). We merely note that, as to both items, we consider the evidence in respondent's favor, unopposed by any evidence or credible testimony favoring petitioners, to be clear and convincing. See sec. 7454(a); Rule 142(b). 2. Other Items
Schedule 3 of respondent's deficiency notice lists the various adjustments composing her deficiency determinations for the years at issue. In her opening brief, respondent requested ultimate findings of fact that, if established, would prove virtually all of those adjustments. Petitioners, in large part, have not objected to those requested ultimate findings of fact, either by making explicit objections *248 to findings of fact, or by otherwise objecting in the argument portions of their briefs. Except as here set forth, we deem petitioners to have conceded all of respondent's adjustments for purposes of both the deficiencies and the additions to tax, including the additions for fraud. [4] We will discuss only those adjustments (i) that would not entirely be proven by respondent's requested ultimate findings of fact (if established), or (ii) not conceded because petitioners have objected in part to respondent's requested ultimate finding of fact (either as explicit objections to findings of fact or otherwise). [5] In the attached appendix, we have set forth respondent's schedule 3, respondent's requests for findings of fact, and petitioners' objections thereto. *249 a. Gross Receipts
Respondent has requested an ultimate finding of fact that petitioners omitted gross receipts from petitioner's law practice in the amounts of $ 19,170.91, $ 16,974.02, $ 2,246.75, and $ 3,277.83 for 1982, 1983, 1984, and 1985, respectively. In their reply brief, petitioners objected only to the $ 10,262 item for 1982, discussed above. We therefore deem petitioners to have conceded the adjustments on account of unreported gross receipts, except to the extent of $ 10,262 in 1982. Inasmuch as we have previously determined the adjustment for that item to be correct for purposes of fraud, we find that respondent has proved, in their entirety, the unreported gross receipts determined in her notice of deficiency. Sec. 7454(a); Rule 142(b). b. Business Expenses
In her notice of deficiency, respondent disallowed business expenses of $ 52,828.04, $ 36,078.82, $ 23,476.22, and $ 25,962.22 for 1982, 1983, 1984, and 1985, respectively. Respondent has requested an ultimate finding of fact that "Petitioners were not entitled to any business expenses for Murray Hardesty's law practice in excess of those allowed by the respondent in the notice of deficiency." Petitioners *250 objected as follows: Petitioners are entitled to business expenses from petitioner[']s law practice in excess of those allowed by the respondent in the Notice of Deficiency: to wit, petitioner is entitled to [a] business expense in the amount of $ 18,577.00 [sic] as a shareholder expense for tax year 1982.
We interpret petitioners' objection as limited to the $ 18,577.17 item and deem them to have conceded the adjustment on account of business expenses, except, of course, to the extent of $ 18,577.17 for 1982. Inasmuch as we have previously determined the adjustment for that item to be correct for purposes of fraud, we find that respondent has proved, in their entirety, the overstated business deductions determined in her notice of deficiency. Sec. 7454(a); Rule 142(b). c. Payments to IRA
During each year at issue, petitioners contributed $ 4,000 to Individual Retirement Accounts (IRA's) and claimed a deduction in that amount. For each year at issue, respondent has disallowed $ 1,750 of that claimed deduction. Respondent's requested finding of fact, to which petitioners have not objected, however, merely states that "Petitioners made excessive IRA contributions *251 in each of the years 1982, 1983, 1984, and 1985." It does not state the extent to which those contributions were excessive. We therefore do not deem petitioners to have conceded this adjustment, and we must determine whether respondent has adduced evidence sufficient to sustain her burden of proof. Sec. 7454(a); Rule 142(b). Section 219(a) provides that an individual may deduct certain contributions to an IRA, designated "qualified retirement contributions". Section 219(b)(1) limits that deduction to the lesser of (i) $ 2,000 or (ii) the compensation includable in the individual's gross income for the taxable year. Compensation includes earned income, section 219(f)(1), but generally is limited to payments for services actually rendered. Sec. 1.219-1(c)(1), Income Tax Regs.
Respondent argues that, under section 219(b)(1), petitioner Madeline A. Hardesty had insufficient compensation to entitle her to a $ 2,000 deduction. In each year at issue, respondent argues, petitioner Madeline A. Hardesty's only reported income was $ 7,200 received from petitioner. Respondent further argues that the $ 7,200 reported by petitioner as income was not compensation because she never actually *252 performed any services, as required by section 1.219-1(c)(1), Income Tax Regs. Respondent has failed, however, to present any evidence in support of that contention. Accordingly, respondent has failed to sustain her burden of proof as to the IRA adjustments for each year at issue. Sec. 7454(a); Rule 142(b). d. Charitable Contributions
(1) Background
For 1984 and 1985, petitioners claimed deductions of $ 4,021 and $ 9,995, respectively, for charitable contributions. On May 20, 1984, and May 4, 1985, petitioners purchased certain goods and services at the American Cancer Society's annual "Gala Auction" in Topeka, Kansas. Included in petitioners' claimed deductions for 1984 and 1985, respectively, were the entire amounts paid to the American Cancer Society for goods and services in those years: $ 3,585 and $ 8,700, respectively. Respondent disallowed those claimed deductions to the extent of $ 3,276 and $ 8,645, for 1984 and 1985, respectively. Not every payment to a charitable organization is a charitable contribution: an essential element is donative intent. Therefore, "A payment of money generally cannot constitute a charitable contribution if the contributor expects *253 a substantial benefit in return." United States v. American Bar Endowment, 477 U.S. 105, 116 (1986). It is settled law, therefore, that the portion of the payment representing the fair-market value of the goods or services received is purchase price, and only the amount paid in excess may be a charitable contribution, if paid with donative intent. See sec. 170(c); United States v. American Bar Endowment, 477 U.S. at 117. Petitioner testified at trial (and, in any event, we would conclude) that petitioners received a benefit from the goods and services purchased at the auctions. To that extent, however indeterminate, it logically follows that petitioners overstated their charitable deductions in 1984 and 1985. We therefore conclude that respondent has shown some resultant underpayment in 1984 and 1985. See sec. 7454(a); Rule 142(b). That conclusion is insufficient for our purposes, however, because we must also determine the extent to which petitioners received a benefit from the goods and services at issue and therefore overstated their charitable deductions. With respect to all but one of the items purchased *254 by petitioners, the stipulations of fact establish the value set on each item by the American Cancer Society. [6] *255 In the absence of any countervailing evidence, we accept those figures as proof of value. As for the one item whose value is not established by the stipulations, the diamond ring, we have in evidence a letter of consignment between Wolf's Jewelers and the American Cancer Society. That letter of consignment, dated May 2, 1985, provides that the amount due upon successful auction of the ring is $ 2,375 (which amount purportedly represents wholesale cost less a discount of $ 250). [7] In the alternative, if payment is not made, the letter of consignment provides that the diamond ring is to be returned on May 6, 1985. The letter of consignment does not, however, state the retail value of the diamond ring (nor would it necessarily be nonhearsay for that purpose). Respondent therefore has sought to introduce into evidence certain other exhibits in order to demonstrate the retail value of that item. (2) Admissibility of Certain Documents
Respondent has asked this Court to take into evidence certain exhibits that apparently are documents of the American Cancer Society. Those documents, captioned "Gala Income and Expense Report, May 14, 1985" (expense report) and "Addendum to Silent Auction" (addendum), purportedly demonstrate the value of the diamond ring and other items *256 and services purchased by petitioners from the American Cancer Society. Petitioner objects that (1) the so-called addendum has not properly been authenticated, and (2) both the addendum and the expense report are hearsay to which no exception applies and therefore are inadmissible. Respondent argues that (1) the addendum has been properly authenticated, (2) the addendum is not hearsay, under rule 801(c) of the Federal Rules of Evidence, and (3) as to both documents (if the addendum is hearsay), either the business records exception of rule 803(6) of the Federal Rules of Evidence, or, in the alternative, the "catchall" exception of rule 803(24) of the Federal Rules of Evidence, is applicable and that both documents at issue are therefore admissible. Because we find both documents to be inadmissible, we do not consider the authentication issue. (a) Rule 801(c) of the Federal Rules of Evidence
Respondent contends that the addendum is not a "statement", within the meaning of rule 801(c) of the Federal Rules of Evidence, and therefore is not hearsay. The addendum * * * in this case is a document setting forth items to be auctioned. The contemporaneous acts and statements *257 of parties to a contract are verbal acts not excluded under the hearsay rule. E.g., Cobb v. Commissioner, T.C. Memo. 1985-208; State Pipe & Nipple Corp. v. Commissioner, T.C. Memo. 1983-339. The addendum * * * is thus a verbal act that is admissible.
State Pipe & Nipple Corp. v. Commissioner, T.C. Memo. 1985-208, cited by respondent, states the rule as follows: "It is well settled that testimony relating an out-of-court declarant's offer or acceptance of a contract is not hearsay." The addendum, however, is neither an offer nor a contract; it is a solicitation of an offer. Respondent has adduced no authority for the proposition that a mere solicitation falls within the above-cited rule. We therefore find that the addendum is hearsay and will be excluded unless some exception to the hearsay rule applies. (b) Rule 803(6) of the Federal Rules of Evidence[8]
*258 In order for the exception to apply, the custodian (or other qualified witness) must testify that the memorandum (1) was made at or near the time of the event, (2) by, or from information transmitted by, a person with knowledge, (3) in the course of a regularly conducted business activity, and (4) where it was that business' regular practice to make such memorandum. It is not sufficient that the document purport to prove those facts; such showing must be made through the testimony of the custodian (or other qualified witness). Respondent called Sherry Wittenbach (Wittenbach), the northern area vice president of the American Cancer Society, to lay the above described foundation for the two documents in question. Wittenbach testified that the American Cancer Society has held gala auctions, and kept records thereof, each year from 1983 to 1990. Beyond that, Wittenbach testified only that she found those documents in the files of the American Cancer Society. She was not able to testify as to when those documents were made or whether such documents were made by, or from information transmitted by, a person with knowledge. [9] Accordingly, we find that respondent failed to lay *259 the proper foundation for the two documents at issue and that rule 803(6) of the Federal Rules of Evidence does not apply. (c) Rule 803(24) of the Federal Rules of Evidence
Rule 803(24) of the Federal Rules of Evidence, known as the "catchall" hearsay exception, generally exempts from the hearsay rule any statement "having equivalent circumstantial guarantees of trustworthiness" as the preceding exceptions, providing that *260 certain other requirements also are satisfied, including the provision of adequate notice. Because we conclude that adequate notice was not provided, we do not consider the other requirements of rule 803(24) of the Federal Rules of Evidence.
"[A] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing * * * [his] intention to offer the statement and the particulars of it, including the name and address of the declarant." Fed. R. Evid. 803(24) (emphasis added). Respondent argues that by (1) complying with our standing pretrial order and exchanging this document prior to trial and (2) stating in her trial memorandum that she would call a witness from the American Cancer Society to establish that petitioner purchased goods and services at the auction, she satisfied the notice requirement of rule 803(24) of the Federal Rules of Evidence.Respondent does not allege, however, that she in fact provided the name and address of the declarant, as literally required by the rule. Instead, she argues that The notice requirement of Rule 803(24) is intended to afford the party against *261 whom the statement is offered a sufficient opportunity to determine its trustworthiness in order to provide a fair opportunity to meet the statement. The notice requirement of Rule 803(24) is to be interpreted flexibly, with this underlying policy in mind. See United States v. Evans, 572 F.2d 455, 489 (5th Cir. [1978]), cert. denied [Tate v. United States] 439 U.S. 870 (1978). See United States v. Leslie, 542 F.2d 285, 291 (5th Cir. 1976). (Even if notice not given appellant was not harmed, since his counsel had a fair opportunity to meet statements.) We have read the cases cited by respondent but remain unpersuaded. While there may indeed be unusual cases in which the proponent's failure to provide the advance notice called for in rule 803(24) of the Federal Rules of Evidence is harmless error and therefore excusable (since exclusion would not advance the purposes of the rule), we are not convinced that the error is harmless in this case. Accordingly, the notice requirement of rule 803(24) of the Federal Rules of Evidence is not satisfied, rule 803(24) of the Federal Rules of Evidence *262 is inapplicable, and both the addendum and the expense report are inadmissible. 3. Value of the Diamond Ring Purchased by Petitioners
The stipulations establish that petitioners paid $ 3,700 for the ring. Respondent, arguing that actual sales are persuasive evidence of value, asks us to value the ring at $ 3,700. It is only sales at arm's length, however, that are persuasive, see Morris v. Commissioner, 70 T.C. 959, 988 (1978), and it is far from clear that petitioners' purchase of the ring, at a charity auction, was at arm's length. Moreover, the stipulations establish that petitioners paid more than the stated value of many items purchased at the 1984 and 1985 auctions. We therefore give little weight to petitioners' purchase of the ring for $ 3,700. The only other admissible evidence with any bearing on this issue is the letter of consignment, to the extent that it evidences the American Cancer Society's agreement to pay $ 2,375 for the diamond ring at issue. Petitioner argues, however, that there is no direct proof that the ring referenced in the letter of consignment is the one purchased by petitioners at the 1985 Gala Auction. *263 We disagree. It is clear that the diamond ring referenced in the letter of consignment was intended to be auctioned at the American Cancer Society's 1985 Gala Auction. It is also clear that a diamond ring was sold at that auction. In light of those facts, and the lack of evidence that any other diamond ring was sold at that auction, [10] we are persuaded that the diamond ring bought by petitioners is the same ring consigned to the American Cancer Society by Wolf's Jewelers. [11]
*264 As for the value of that ring, our best evidence is the letter of consignment, insofar as it evidences the American Cancer Society's agreement to pay $ 2,375. In the absence of any persuasive countervailing evidence, we accept that figure as proof of the ring's value. 4. Conclusion
To the extent that petitioners received value for their payments to the American Cancer Society, as shown above, respondent properly disallowed any charitable contribution deduction. Sec. 170(c); United States v. American Bar Endowment, 477 U.S. 105, 117 (1986). For 1985, petitioners paid $ 3,585 for items worth $ 3,276 and, thus, on account of such payments are entitled to a charitable deduction of only $ 309 (the amount allowed by respondent). Likewise, for 1985, petitioners paid $ 8,700 for items worth $ 7,600 and, thus, are entitled to a charitable deduction of only $ 1,100 on account of such payments ($ 900 greater than the amount allowed by respondent). a. Payments to Brice Cripps
From 1982 to 1985, Brice Cripps (Cripps) performed yard maintenance services for both petitioner's business premises and his personal residence. The charges for those services *265 were approximately $ 15 to $ 20 and $ 25 to $ 30, respectively (for the business premises and the residence premises), for each year at issue. Cripps testified that, to the best of his recollection (about which he had doubts), petitioner received one bill for both locations and paid with one check, in each of the years at issue. Specifically, he testified: "As far as getting paid, I am not sure. I think it was one check, but I don't know." He also testified that he no longer has those records. Petitioner concedes that only one bill was received but argues that there is no substantiation for the allegation that both personal and business services were paid for with one check except for witness Cripps' uncertain statement. In 1982, 1983, and 1984, petitioner deducted certain payments to Cripps. It is not readily apparent whether he deducted only the expenses relating to business premises, which expenses respondent does not question, see sec. 162, or whether he also deducted the expenses related to his residence, which clearly are not deductible. See sec. 262. As the parties have argued the matter, it seems that petitioner has deducted certain checks in their entirety and the *266 issue is whether those checks comprised nondeductible, as well as deductible, expenses. Petitioner suggests that they did not and that separate checks were written to Cripps for services respecting petitioners' residence. Respondent bears the burden of proving an underpayment by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Her only evidence is Cripps' less than confident testimony. However, we accord no weight whatever to petitioner's suggestion that the personal expenses may have been paid for by separate checks. Had such checks been written, we think petitioner could have produced the checks or some bank record showing the same; because he has failed to do so, we accord no weight to his testimony that there were separate checks. Cripps' testimony, however, even unopposed by any credible testimony or evidence on behalf of petitioner, is insufficient for us to conclude, by clear and convincing evidence, that no additional checks were written and that petitioner deducted all payments to Cripps, including that portion related to lawn care at petitioners' personal residence. See sec. 7454(a); Rule 142(b). With respect to this item, respondent has failed to demonstrate *267 an underpayment. b. Travel and Entertainment Expenses[12]
Petitioners claimed deductions for travel and entertainment expenses, in the amounts of $ 16,169.20, $ 19,970.19, $ 4,546.52, and $ 6,911.44 for 1982, 1983, 1984, and 1985, respectively. Included in those deductions were some of petitioners' dues at the Topeka Country Club. Petitioner Madeline Hardesty played golf, ate meals, and bought clothes at the country club. No deduction is permitted for personal living expenses. Sec. 262. A deduction is allowed, however, for ordinary and necessary expenses of carrying on a trade or business. Sec. 162. As to deductions respecting travel and entertainment *268 expenses, however, section 274 imposes substantiation requirements stricter than those otherwise applicable under section 162. In order to deduct travel and entertainment expenditures, the taxpayer must substantiate, by adequate records or other evidence corroborating his own testimony, the amounts, time, place, and business purpose of the expenditures claimed. Sec. 1.274-5, Income Tax Regs.
Petitioners failed to substantiate those expenses and, accordingly, are not permitted a deduction therefor. A taxpayer's failure to substantiate expenses, however, ordinarily is not equivalent to respondent's meeting her burden of proof, see sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). Where travel and entertainment expenses are at issue, however, a peculiar rule applies. Section 274(d) provides that, with certain inapplicable exceptions, no deduction for travel and entertainment expenses (or similar items) will be allowed: unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, *269 amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * *
As the regulations make clear: "Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure * * * [to which section 274(d) applies]". Sec. 1.274-5(c)(1), Income Tax Regs. (Emphasis added.) There is no such substantiation in the record. Accordingly, even where, as here, the Commissioner bears the burden of proving an underpayment by clear and convincing evidence, the taxpayer's failure to comply with the substantiation requirements of section 274(d) (assuming, of course, that respondent properly has placed section 274 at issue) suffices to demonstrate the unavailability of any deduction under section 162 or 212. We therefore hold that respondent has carried her burden of proving that all of petitioners' travel and entertainment expenses improperly were claimed. B. As to Which Items Has Respondent Demonstrated Fraudulent Intent *270 ? The existence of fraud under section 6653(b)(1) and (2) is a question of fact to be determined from the entire record. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Meier v. Commissioner, 91 T.C. 273, 297 (1988). Respondent has the burden of proving, by clear and convincing evidence, that a taxpayer's underpayment of tax is due to fraud. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, 84 T.C. 405, 408-409 (1985). That burden is met if it is shown that the taxpayer intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Kotmair v. Commissioner, 86 T.C. 1253, 1259 (1986); Castillo v. Commissioner, supra at 408-409. A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972). Fraud will never be presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), *271 but may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Recklitis v. Commissioner, supra at 910; Meier v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, supra; Meier v. Commissioner, supra.
Before turning to the evidence before us, we note preliminarily that, in determining whether an underpayment of tax is attributable to fraud, when a claim of ignorance or honest mistake is set forth, we will consider the taxpayer's intelligence, education, and tax expertise. Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986). Petitioner, as we have set forth above, is and was, during the years at issue, a tax expert: petitioner has practiced tax law, taught tax law, authored several tax articles, and represented taxpayers in this and other Federal courts. While we will not rule out ignorance or deny the possibility of mistake, naturally we must view petitioner's *272 protestations of ignorance or innocent mistake with more scrutiny than we would those of a less sophisticated taxpayer. Id.
Having considered all of the evidence before us, we conclude that respondent clearly and convincingly has shown fraud with respect to the entire underpayments (to the extent proven) for the years at issue. We do so on the basis of certain badges of fraud, which this Court has found indicative of a fraudulent intent. This Court has determined the following to be badges of fraud: (1) A pattern of substantially understating income; (2) inadequate records; (3) implausible or inconsistent explanations of behavior; and (4) the failure to cooperate with tax authorities. Recklitis v. Commissioner, supra; [13]Meier v. Commissioner, supra at 297-298. We consider each in turn. *273 1. Understatement of Income
"Consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, [are] persuasive evidence of fraudulent intent to evade taxes." Estate of Beck v. Commissioner, 56 T.C. 297, 364 (1971). In this case, we have sustained deficiencies of over $ 110,000, based on underreported taxable income of approximately $ 285,000, over a 4-year period. [14] Moreover, respondent affirmatively has proved most of those adjustments to be correct by clear and convincing evidence. Sec. 7454(a); Rule 142(b). We think that petitioner, a tax expert, can hardly have honestly underreported his taxable income to the extent he did: his pattern of substantially underreporting taxable income over a 4-year period is evidence of fraud. See Estate of Beck v. Commissioner, supra at 364; Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). *274 2. Inadequate Records
Petitioner, a tax expert, surely was aware of the need to maintain adequate records for income tax purposes. The record makes clear that petitioner kept adequate records as to neither income nor claimed deductions. Petitioner testified that he reported income based solely upon the deposit records to his business account. The very best that might be said of that record-keeping system is that it has proved grossly inadequate. Petitioner's record-keeping system predictably failed to account for: (1) Expenses of petitioner's, clearly personal in nature, paid by H & P; (2) cash fees not deposited; and (3) checks deposited into accounts other than the business account. [15] The parties dispute whether petitioner had the capacity to generate yearend reports showing billings and collections by using H & P's computer records. In any event, it is clear that petitioner failed to keep adequate records of income items and that petitioner, whether by means of H & P's computer records or otherwise, possessed more than sufficient sophistication to keep such records, but declined to do so. *275 Petitioner also failed to keep adequate records of the claimed $ 18,577.17 payment for work in progress. Petitioner maintains that that figure was determined by preparing an accounting; however, he cannot produce that accounting, he says, because he had only one copy, which he provided to, and subsequently was lost by, respondent. Respondent's agent testified to the contrary. We think that the accounting never existed and conclude that petitioner failed to keep adequate records of the alleged $ 18,577.17 expense. Petitioner also failed to keep adequate records of the claimed travel and entertainment expenses. To reiterate, we think that petitioner, a tax expert, surely understood the need for such records and yet, for no legitimate reason of which we are aware, declined to keep them. The foregoing reflects a pattern by petitioner of failing to keep adequate records, both as to items of income and claimed deductions. That failure is a badge of fraud. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Meier v. Commissioner, 91 T.C. 273, 297 (1988). 3. Implausible or Inconsistent Explanations of Behavior
The *276 record demonstrates several instances in which petitioner has advanced implausible or inconsistent explanations of his behavior. With regard to the $ 10,262 of unreported income discussed above, petitioner maintains that he merely deposited those funds in his account on behalf of H & P, which, he testified, may have lacked an interest-bearing account. As observed above, we think that, if H & P lacked an interest-bearing account at that time, and petitioner therefore held funds on its behalf, petitioner would have known, rather than suspected, that to be the case. Moreover, petitioner also testified that, at least by 1983, H & P maintained an interest-bearing money market account. We find petitioner's explanation of acting as H & P's agent implausible. With regard to the claimed $ 18,577.17 deduction discussed above, petitioner has inconsistently told respondent's agents that that expense (1) represented payments to other shareholders of H & P for work in progress, and (2) represented a reduction in the value of H & P stock, on account of the reorganization. Not only are those explanations inconsistent, but we think it implausible that petitioner, a tax expert, would *277 honestly have thought a deduction appropriate for the alleged decline in value of his H & P stock. Moreover, with respect to the "work in progress" argument, petitioner contends that his only copy of an accounting used to compute that figure was given to, and lost by, respondent. As stated above, we find that explanation (for petitioner's failure to justify the $ 18,577.17 figure) to be implausible. In 1984 and 1985, petitioners purchased various goods and services at a charity auction and claimed deductions for the entire amounts paid. It is clear that only the portion of those payments exceeding the value of the goods and services purchased qualifies as a charitable contribution. Sec. 170(c); United States v. American Bar Endowment, 477 U.S. 105, 117 (1986). Petitioner has represented clients in cases involving charitable contribution deductions and, by his own admission, is, and long has been, familiar with the foregoing rule. Petitioner argues that, although he (and his wife) received a benefit from the goods and services purchased, he claimed a deduction for the entire purchase price because he did not know the extent of the benefit received. *278 We find that explanation implausible because, whatever doubts he may have had, petitioner surely knew such benefit was substantially greater than zero and therefore cannot have believed himself (and his wife) entitled to a deduction for the entire amount. Petitioner also advanced inconsistent explanations regarding claimed deductions, for 1982, 1983, and 1984, for payments made from petitioner's business account to a house sitter, Sherry Stickley. Petitioner told respondent's agent Stambaugh that Stickley performed research and typing services. Petitioner now concedes that Stickley did not perform such services. With regard to his statement to agent Stambaugh, petitioner makes arguments that not only are difficult to reconcile, but are inconsistent. Petitioner argues that (1) he does not recall making the above statement to agent Stambaugh, and (2) during that conversation, he confused Stickley with someone else who had performed research and typing services for H & P in the past. We do not believe petitioner can remember the details of a conversation he cannot recall. We find petitioner's explanations to be inconsistent. With regard to claimed deductions for life insurance *279 payments as medical expenses, petitioner argues that he believed the checks written to Guardian Life Insurance Co. were not for life insurance, but, instead, were for medical insurance. We think petitioner must surely have known he had one or more life insurance policies on which premiums were owing and could not innocently have concluded that the payments to Guardian Life Insurance Co. were for other than life insurance. We find petitioner's explanation implausible. The foregoing suggests not only one or two isolated instances of implausible or inconsistent explanations, which by themselves would constitute some evidence of fraud, Recklitis v. Commissioner, supra; Meier v. Commissioner, supra, but a clear pattern of fabrication. We think such a pattern a persuasive badge of fraud. 4. Failure to Cooperate With Tax Authorities
The history of this litigation amply demonstrates that, at every turn, petitioner has refused to cooperate with respondent in seeking an expeditious and honest resolution of petitioners' tax liability for the years at issue. On June 13, 1991, we issued a notice setting case for *280 trial on November 18, 1991, by which notice we advised the parties of their responsibility to stipulate, in good faith, to facts and documents. [16] Petitioner did not, in good faith, attempt to stipulate to facts or documents. On October 4, 1991, respondent filed a motion to show cause why proposed facts in evidence should not be accepted as established (motion to show cause), to which motion respondent attached a proposed stipulation of facts. In her motion, respondent set forth the repeated attempts of her agent to achieve a stipulation with petitioners. Respondent's agent spoke with petitioner on August 28, 1991, on two occasions between August 28, 1991, and September 25, 1991, and again on September 25, 1991. On each occasion, petitioner declined to discuss the stipulation of facts and further declined *281 to schedule a conference at which he would be willing to do so. On September 26, 1991, respondent's agent mailed a proposed stipulation of facts to petitioners. Respondent's agent called petitioner to discuss the proposed stipulation; again, petitioner declined to discuss the proposed stipulation and further declined to schedule a conference at which he would be willing to do so. Pursuant to our order of October 18, 1991, petitioners, on October 28, 1991, filed a reply to respondent's motion to show cause; petitioners also filed, in the same document, a motion for continuance. In their response and motion, petitioners contested none of the above assertions (which we accept as fact), but complained generally of the hardship of being forced to comply with the pretrial order, asserting, inter alia, that petitioners were out of the country, on a vacation planned and purchased prior to our setting a date for trial. [17] In the alternative to their motion for continuance, petitioners requested an extension of the deadline for exchanging evidence until November 8, 1991, and an extension of the deadline for submitting their trial memorandum until November 12, 1991. Respondent filed a *282 reply to petitioners' response to respondent's motion to show cause and motion for continuance on October 29, 1991. On November 7, 1991, we issued an order ruling that the facts and evidence set forth in respondent's proposed stipulation of facts are deemed to be established for the purposes of this case. We further denied petitioners' motion for continuance. At no time prior to trial did petitioners identify any documents or witnesses on which they intended to rely at trial. On October 12, 1991, respondent filed a motion in limine to exclude evidence (motion to exclude) in accordance with the provisions of the pretrial order set forth above. In accordance with our order of November 15, 1991, petitioners filed a response to respondent's motion to exclude on November 18, 1991, the first date of the trial *283 calendar. On November 18, 1991, we issued an order granting respondent's motion to exclude. At that time, we orally denied petitioners' renewed motion for continuance and respondent's motion to dismiss for lack of prosecution. Petitioners submitted a trial memorandum on November 18, 1991, the date of trial, declining to obey our pretrial order requiring that a trial memorandum be submitted no less than 15 days prior to the first day of trial. In that trial memorandum, petitioners requested additional time to address the penalty issues. At no time before trial did petitioners concede a single item of respondent's deficiency determination for any year at issue. Ultimately, however, petitioners contested only two of respondent's adjustments (in addition to an $ 1877.40 item conceded by respondent at trial). Based on the foregoing, it is clear that petitioner has utterly failed to cooperate with respondent. Petitioner has failed to cooperate with respondent to stipulate facts; failed to timely submit a trial memorandum, and failed to concede the vast majority of respondent's adjustments, which, we firmly believe, petitioner never intended to contest. Petitioner's failure to *284 cooperate has resulted in our ruling the facts and evidence set forth in respondent's proposed stipulation to be established for purposes of this trial and in our granting respondent's motion in limine to exclude evidence. That failure to cooperate suggests an unwillingness to resolve honestly petitioners' tax liability for the years at issue and constitutes a badge of fraud. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Meier v. Commissioner, 91 T.C. 273, 297 (1988). 5. Conclusion
Overall, petitioner's expertise and entire course of conduct belie his protestations of innocence and emphatically evidence a desire fraudulently to avoid Federal income tax. Petitioner has consistently and substantially underreported income; failed to keep records he undoubtedly knew were necessary; refused to cooperate with respondent in any meaningful way (in violation of our pretrial order); and offered explanations ranging from implausible to obvious lies. We think this evidence sufficient to demonstrate a pattern of fraudulent tax avoidance and to prove, by clear and convincing evidence, fraudulent intent as to the entire *285 underpayments (to the extent proven by respondent) for the years at issue. Cf. Gross v. Commissioner, T.C. Memo. 1990-93; Egner v. Commissioner, T.C. Memo. 1989-247, affd. without published opinion 936 F.2d 582 (10th Cir. 1991). C. Conclusion
With respect to section 6653(b)(1), respondent has shown there to be some underpayment of tax due to fraud for each of the years at issue. We therefore uphold respondent's additions to tax under section 6653(b)(1) for the years at issue. With respect to section 6653(b)(2), respondent has met her burden only in part. She has succeeded in demonstrating certain items giving rise to underpayments and failed in demonstrating others. She also has succeeded in showing fraud as to the entire underpayments (to the extent proven). Accordingly, we sustain respondent's additions to tax under section 6653(b)(2), for each year at issue, with respect to only that portion of the underpayment respondent has proven by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Franklin v. Commissioner, T.C. Memo. 1993-184. *286 III. Substantial Understatement
The petition in this case contains no assignments of error or allegations of fact with respect to respondent's determination of additions to tax for substantial understatement under section 6661. We therefore deem petitioners to have conceded that issue. Rule 34(b)(4). IV. Additions to Tax in the Alternative to Fraud
Respondent has determined, in the alternative to fraud, additions to tax for negligence, failure to file, and failure to pay, pursuant to sections 6653(a)(1) and (2), and 6651(a)(1) and (2), respectively. Because we have found fraud for each of the years at issue, we deem respondent to have conceded these additions to tax. Decision will be entered under Rule 155. APPENDIX I. Schedule 3 of the Deficiency Notice
Description
1982
1983
1984
1985
Gross receipts, Sch. C.
$ 19,170.91 $ 16,974.02
$ 2,246.75 $ 3,277.83
Other income
1,952.87 Business expenses, Sch. C
52,828.04 36,078.82
23,476.22 25,962.22
Rent income, Sch. E
745.00
Rent expenses, Sch. E
18,005.05 10,980.32
6,395.66 15,563.39
State income
4,210.26
tax refund
Interest income
3,600.45 470.93
1,246.61
Dividend income
2,615.34
20.13
Abandonment loss
(14,955.62)
Alimony income
6,000.00 6,000.00
6,000.00 6,000.00
Itemized deductions
(6,259.84)
1,055.08
18,903.62 6,209.01
Working spouse deduction
520.00 Other compensation
2,249.85 2,047.64
Payment to IRA
1,750.00 1,750.00
1,750.00 1,750.00
Investment credit
Res. energy cr. recap.
Self-employment tax
Tax on IRA
Income averaging
Total
$ 97,344.46 $ 82,927.41
$ 46,289.50 $ 60,029.19
*287 II. Requested Ultimate Findings of Fact
244. Petitioners omitted gross receipts from Murray F. Hardesty's law practice for the years 1982, 1983, 1984, and 1985 in the amounts of $ 19,170.91, $ 16,974.02, $ 2,246.75, and $ 3,277.83, respectively. 245. Petitioners received other income or compensation for the years 1982, 1983, and 1984 in the form of payments of personal expenses by Hardesty & Puckett in the amounts of $ 2,249.85, $ 2,047.64 and $ 1,952.87, respectively. 246. Petitioners were not entitled to any business expenses for Murray Hardesty's law practice in excess of those allowed by the respondent in the notice of deficiency. 247. Petitioners received unreported rent income for the year 1983 in the amount of $ 745.00. 248. Petitioners were not entitled to any Schedule E rent expenses in excess of those allowed by the respondent in the notice of deficiency. 249. Petitioner had unreported income for the year 1983 from a refund of previously deducted State income taxes in the amount of $ 4,210.26. 250. Petitioners received unreported interest income for the years 1982, 1983, and 1985 in the amounts of $ 3,600.45, $ 470.93 and $ 1,246.61, respectively. *288 251. Petitioners received unreported dividend income for the years 1983 and 1985 in the amounts of $ 2,615.34 and $ 20.13, respectively. 252. Petitioner Madeline A. Hardesty received unreported alimony income for each of the years 1982, 1983, 1984, and 1985 in the amount of $ 6,000.00 per year. 253. Petitioner did not have itemized deductions (including charitable contributions and medical expenses) in excess of those allowed in the notice of deficiency. 254. Petitioner erroneously claimed a working spouse deduction for the taxable year 1984. 255. Petitioners made excessive IRA contributions for each of the years 1982, 1983, 1984, and 1985. 256. Petitioners erroneously failed to recapture previously taken energy credits in the amount of $ 1,251.60. 257. Petitioners' understatement of gross receipts and overstatement of business deductions resulted in an understatement of self-employment tax for each of the years 1982, 1983, 1984, and 1985. 258. Petitioners' understatements of tax were substantial understatements for which adequate disclosure was not made and no substantial authority existed. 259. All or part of the underpayments of tax for each *289 year were due to fraud. 260. The entire deficiency for each year was due to fraud. 261. In the alternative to fraud, all or part of each underpayment of tax was due to negligence or intentional disregard of rules and regulations. 262. In the alternative to fraud, the entire deficiency for each year was due to negligence. 263. Petitioners' 1985 joint United States Individual Income Tax Return was delinquently filed without reasonable cause. 264. Petitioners delinquently paid their 1982, 1983, and 1985 income taxes without reasonable cause. III. Objections to Requested Ultimate Findings of Fact
244. Object. Petitioners submitted gross receipts from petitioner's law practice for the year 1982 should be $ 8,908.91 since the $ 10,262.00 assessed as omitted income was properly excluded, the same being allocated expenses attributable to former shareholders. Those monies were placed into savings account No. XX-402-6 at Commerce Bank because there was no firm savings account in which to place the money where it could earn interest until needed. This item is not properly included in petitioners' gross income on their personal tax return for 1982. 246. Object. *290 Petitioners are entitled to business expenses from petitioner's law practice in excess of those allowed by the respondent in the Notice of Deficiency: to wit, petitioner is entitled to [a] business expense in the amount of $ 18,577.00 as a shareholder expense for tax year 1982. 258. Object. Petitioners' understatements of tax have been adequately explained as errors in preparation due to the fact that the tax return prepared in haste during the last 2-3 days before the final extension period expired. 259. Object. None of the underpayments of tax for any tax year in question were due to fraud. 260. Object. None of the deficiencies notes [sic] for any tax year in question was due to fraud. 263. Object. Petitioners' 1985 joint United States Individual Income Tax Return was delinquently filed because petitioner's Xerox copying machine broke down at 10:30 p.m. the night the return was due and petitioner had no access to any other copier. 264. Object. Petitioners delinquently paid 1982, 1983, and 1985 income taxes for reasonable cause. IV. Additional Objections
The following objections, found in the argument portions of petitioners' briefs, indicate that *291 certain items indeed are being contested, despite the lack of appropriate objections to respondent's requested findings of fact. 1. With regard to expenses to Brice Cripps, respondent has failed to satisfy its burden due to the fact that it has never been established that any payments deducted in tax years 1982, 1983, and 1984 for lawn care were for the personal residence. 2. Respondent's argument that petitioner fraudulently claimed charitable deductions must fail by reason that respondent has failed to demonstrate by clear and convincing evidence that petitioner received a benefit in return. 3. In our case, petitioner maintains that all amounts expended and claimed were legitimate travel and entertainment expenses, albeit unsubstantiated. Footnotes
1. Plus 50 percent of the interest due on the deficiency↩
1. 5 percent of the deficiency.↩
2. 50 percent of the interest due on the deficiency.↩
1. In her answer, respondent conceded that $ 1,877.40 of the business energy credit recapture for 1984 was excessive.↩
2. In their petition, petitioners assign error to all of the adjustments set forth in respondent's notice of deficiency and giving rise to the deficiencies in tax determined by respondent. On brief, however, petitioners have attempted to carry their burden of proof with respect to only two of those adjustments. With respect to all of the remaining adjustments, petitioners have requested no findings of fact and either have made no argument whatever (generally declining to object to respondent's requests for findings of fact respecting such adjustments), or have argued merely that respondent failed to sustain her burden of proving those adjustments with respect to the additions to tax for fraud. With regard to petitioners' claimed deductions for charitable contributions, however, respondent, in the course of arguing her case with regard to fraud, has offered evidence sufficient for us to find for petitioners, in part, as will be discussed herein. Excepting the above-mentioned items and the item conceded by respondent, we sustain respondent's deficiency determinations on account of petitioners' (1) deemed concessions as to some items, and (2) failure to offer more than a general denial as to all others, such general denial being insufficient to carry petitioners' burden of proof. Rule 142(a)↩.
3. At trial, petitioner testified only that he suspects↩ H & P had no other account in which it could deposit funds and earn interest.
4. Respondent's requested ultimate findings of fact, and petitioners' concessions, do not extend to the $ 1,877.40 of business energy credit recapture for 1984 previously conceded by respondent.↩
5. However, we note that the adjustments on account of self-employment tax and the excise tax on excessive contributions to an Individual Retirement Account are purely derivative from other determinations. We do not deem petitioners to have conceded adjustments as to those items; rather, we consider those adjustments the proper subject of a Rule 155 computation, to be resolved by the parties in accordance with this opinion.↩
6. Those values are as follows: ↩
1984 Auction
Item Name
Stated Value
Majestic Mountain Moment
$ 1,500
Southern Exposure
1,000
Hang By Your Heels
480
Pot Your Patio Properly
125
Four and Twenty Blackbirds
35
A Real Grind
36
Naptime!
100
Total
$ 3,276
1985 Auction
Item Name
Stated Value
Basketball Crazy?
$   100    Sea Meets Shore
325    Comida Para Viente! 200    On Your Mark, Get Set, Go! !
1,000    Oceans of Fun
3,600    Diamond Ring
?    Total
$ 5,225 + ?
7. Petitioner has objected to our admitting this exhibit into evidence on the ground that it is hearsay. See Fed. R. Evid. 802. We agree with respondent, however, that the American Cancer Society's agreement to pay $ 2,375 for the diamond ring (or else return it) constitutes not a "statement", within the meaning of Fed. R. Evid. 801(c), but a "verbal act". Accordingly, that agreement, being a "verbal act", is in evidence. Cf. Goldsmith v. Commissioner, 86 T.C. 1134, 1138 (1986). The further assertion that $ 2,375 is $ 250 less than the wholesale cost of the ring, however, is not a "verbal act", but is a statement, within the meaning of Fed. R. Evid. 801(c)↩, and therefore is hearsay.
8. Fed. R. Evid. 803(6), provides as follows: Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (6) Records of Regularly Conducted Activity. -- A memorandum, report, record, or data compilation, in any form * * * made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness↩ * * * [Emphasis added.]
9. With respect to the document captioned "Gala Income and Expense Report, May 14, 1985", respondent argues that, because the 1985 auction took place on May 4, 1985, the record necessarily was made at or near the time of the event. Wittenbach did not so testify, however, nor did she indicate any knowledge respecting the procedures generally followed by the American Cancer Society in making such reports. Fed. R. Evid. 803(6) explicitly provides that the proper foundation must be made by the custodian↩ (or other qualified witness), and not the content of the document offered into evidence.
10. Respondent alleges, and petitioner has not contested, that none of the 249 items listed in the main 1985 auction catalogue is a diamond ring.↩
11. That conclusion is buttressed, somewhat, by the testimony of Michael Reber, the manager of the jewelry store known in 1985 as Wolf's Jewelers. Reber, who testified that he has personal knowledge of Wolf's Jewelers' transactions with the American Cancer Society, describes a letter of agreement dealing with only a single diamond. Reber neither mentioned any additional diamonds nor did petitioner's counsel ask about any additional diamonds on cross-examination. ↩
12. To the extent that the claimed travel and entertainment expenses include deductions on account of payments to Sherry Stickley, discussed below, we note that petitioner has explicitly conceded both at trial and on brief that such deductions improperly were taken. We here discuss only the remaining travel and entertainment expenses claimed by petitioners.↩
13. Other badges of fraud recognized by this Court include: (1) Failure to file tax returns; (2) concealment of assets; (3) engaging in or attempting to conceal illegal activities; (4) dealing in cash; (5) failing to make estimated tax payments; (6) backdating checks; and (7) filing false documents. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Meier v. Commissioner, 91 T.C. 273, 297-298↩ (1988).
14. That figure comprises approximately $ 70,000 in unreported income and $ 215,000 in overstated deductions.↩
15. Petitioner's unreported receipts are also attributable to checks deposited in the business account that petitioner nonetheless (and quite inexplicably) failed to include on his Federal income tax returns. That particular failure, however, does not reflect an inadequacy in petitioner's method of record-keeping.↩
16. By attached pretrial order, we advised the parties that any documents and materials not stipulated must be identified in writing and exchanged by the parties at least 15 days prior to the first day of trial.↩
17. That motion was filed by Bruce Woolpert on petitioners' behalf. At no time prior to the filing of that motion by petitioners did they inform either respondent or the Court of their plans to leave the country.↩